<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| COMMONWEALTH OF KENTUCKY, ET AL., | § § § | |
| *Petitioners*, | § § | |
| v. | § § | Case No. 24-1050 Consolidated with 24-1052 and 24-1052 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, ET AL., | § § § § § | |
| *Respondents*. | § § | |

**MOTION OF HARRIS COUNTY FOR LEAVE
TO INTERVENE IN SUPPORT OF RESPONDENT**

Pursuant to Federal Rule of Appellate Procedure 15(d) and D.C. Circuit Rule 15(b), Harris County, Texas hereby respectfully moves to intervene in support of Respondent ("EPA") in the above-captioned petition for review, and in any other cases, including later filed ones, involving the same agency action except for any filed by Harris County, per D.C. Circuit 15(b). The petition that is the subject of this intervention motion seeking review of the final rulemaking promulgated by EPA titled *Reconsideration of the National Ambient Air Quality Standards for Particulate Matter*, 89 Fed. Reg. 45, 16202 (March 6, 2024) ("Final Rule"). Pursuant to D.C. Circuit Rule 15(b), this motion also constitutes a motion to intervene in all petitions

1

for review of the challenged Final Rule, except for any petitions that may be filed challenging the Final Rule as insufficiently stringent. The case in which movant is seeking to intervene has been consolidated by the Court with *U.S. Chamber of Commerce et al. v. U.S. Environmental Protection Agency*, Case No. 24-1051 and *State of Texas et al. v. U.S. Environmental Protection Agency*, Case No. 24-1052.

## BACKGROUND

### I.     A brief history of EPA and fine particulate matter.

EPA, under the Clean Air Act, is required to adopt and periodically update the National Ambient Air Quality Standards ("NAAQS") for harmful air pollutants, including particulate matter ("PM"). 42 U.S.C. § 7409. The standards must include "primary" standards requisite to protect public health with an adequate margin of safety and "secondary" standards requisite to protect public welfare against all "known or anticipated adverse effects". *Id*. at § 7409(b)(1)-(2). Once in place, standards are to be implemented by enforceable regulatory programs sufficient to ensure that air quality will meet the standards. 42 U.S.C. §§ 7410(a), (c), 7502.

The petitions for review here address EPA's 2024 revision of the standards for fine particulate matter ("$PM_{2.5}$"). Particulate matter pollution has extensive negative health impacts. Specifically, exposure to "$PM_{2.5}$ is associated with a range of adverse health effects such as coughing; shortness of breath; aggravation of existing respiratory conditions like asthma and chronic bronchitis; increased

susceptibility to respiratory infections; and heightened risk of premature death". *Am. Trucking Ass'ns v. EPA*, 283 F. 3d 355, 359 (D.C. Cir. 2002). High $PM_{2.5}$ concentrations also impair visibility, reducing people's 'well-being…, both where they live and work, and in places [like national parks and wilderness areas] where they enjoyed recreational opportunities'". *Id.*; 62 Fed. Reg. 138, 38652 (July 18, 1997). These impacts, among others, necessitate EPA's regulation.

In 1997, EPA revised the NAAQS for PM by adding two $PM_{2.5}$ standards – annual and 24-hour. 62 Fed. Reg. at 38652. EPA set 15 µg/m$^3$ as the annual standard for $PM_{2.5}$. *Id*. In 2013, the EPA strengthened the annual $PM_{2.5}$ NAAQS by revising the level from 15.0 µg/m$^3$ to 12.0 µg/m$^3$. 78 Fed. Reg. 10, 3086 (January 15, 2013). By lowering the level, EPA provided increased protection against health effects associated with long- and short-term exposures. *Id*. In December 2020, EPA decided that it would not revise the then-existing $PM_{2.5}$ standard. 85 Fed. Reg. 244, 82684 (Dec. 18, 2020). In June 2021 EPA announced that it was reconsidering the 2020 decision "because available scientific evidence and technical information indicate that the current standards may not be adequate to protect public health and welfare, as required by the Clean Air Act." [1]

---

[1] Press Release, *EPA to Reexamine Health Standards for Harmful Soot that Previous Administration Left Unchanged* (June 10, 2021).

On January 27, 2023, EPA published a proposed rule action to reconsider the air quality criteria and the NAAQS for particulate matter. 88 Fed. Reg. 18, 5558 (January 27, 2023). EPA proposed to revise the primary annual $PM_{2.5}$ standard by lowering the level from 12.0 μg/m$^3$ to within the range of 9.0 to 10.0 μg/m$^3$ while taking comment on alternative annual standards levels down to 8.0 μg/m$^3$ and up to 11.0 μg/m$^3$. *Id*. at 5560. On March 6, 2024, EPA published the final rule for reconsideration of the air quality criteria and the annual NAAQS for particulate matter. 89 Fed. Reg. at 16202. EPA revised the primary annual $PM_{2.5}$ standard by lowering the level from 12.0 μg/m$^3$ to 9.0 μg/m$^3$. *Id*. This standard is within the range recommended by the majority of the Clean Air Scientific Advisory Committee, whose advice the Act requires EPA to consider in reviewing and revising air quality standards. 89 Fed. Reg. at 16204.

## II.     Harris County supports EPA's revised $PM_{2.5}$ Annual NAAQS.

Petitioners here—including the State of Texas and the Texas Commission on Environmental Quality—seek to invalidate, weaken, delay, or vacate the Final Rule. Intervenor Harris County, Texas ("Harris County" or "the County") is a body corporate and politic under the laws of the State of Texas. The County has specific government interest at state in this litigation including its responsibilities over air quality among others. Additionally, Harris County has millions of residents living

in areas that do not meet the new PM$_{2.5}$ standard.[2] The County has commented and advocated to protect public health and the environment against air pollution.

Harris County has supported the revised particulate matter standards, noting in its comments that the prior standards were not adequate to protect public health and welfare.[3] The County's comments included data showing that areas in the County struggled to meet the prior standard, and would likely fail to be in attainment if the standard were to be lowered.[4] The County urged EPA to adopt the proposed revised standards. Those standards were ultimately adopted by the agency in the Final Rule at issue here.

## ARGUMENT

Under Federal Rule of Appellate Procedure 15(d), a motion to intervene must be filed "within 30 days after the petition for review" and need only provide "a concise statement of the interest of the moving party and the grounds for

---

[2] EPA, *Fine Particle Concentrations for Counties with Monitors Based on Air Quality Data from 2020 - 2022* (Feb., 2024), https://www.epa.gov/system/files/documents/2024-02/table_annual-pm25-county-design-values-2020-2022-for-web.pdf.

[3] *See* Comment submitted by Attorney's Office, Harris County, Texas (Apr. 2, 2023), EPA-HQ-OAR-2015-0072-2304.

[4] *See also* EPA, *Proposed Decision for the Reconsideration of the National Ambient Air Quality Standards for Particulate Matter (PM)*, maps of Current and Projected Air Quality Data for Counties with Monitors, https://www.epa.gov/system/files/documents/2023-01/PM%20Maps%20-%202022%20proposal%20%282%29.pdf (showing Harris County not meeting proposed standards).

intervention." Fed. R. App. P. 15(d), *see Synovus Fin. Corp. v. Bd. of Governors of Fed. Reserve Sys.*, 952 F.2d 426, 433 (D.C. Cir. 1991). This Court has noted that "in the intervention area the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesses v. Camp*, 385 F. 2d 694, 700 (D.C. Cir. 1967) (internal quotation marks removed) (reversing denial of intervention under Fed. R. Civ. P. 24(a)). Harris County satisfies this test, as explained below and shown by the attached declaration.

## I.    The County satisfies the standard for intervention.

### A.    This motion is timely filed.

As mentioned above, a motion to intervene must be filed within 30 days after the petition for review. Petitioners filed their petition for review on March 6, 2024. Accordingly, this motion is timely filed on April 5, 2024. Fed. R. App. P. 15(d).

### B.    The County has significant interests and Article III standing to defend the Final Rule.

Harris County, as a local government, has significant interests at stake in this litigation and has standing to seek redress of the specific concrete injuries it will suffer. Under Article III, a prospective intervenor must show the following to establish standing: "(1) injury-in-fact, (2) causation, and (3) redressability". *Funds for Animals, Inc. v. Norton*, 322 F. 3d 728, 732-33 (D.C. Cir. 2003) Standing may be established by prospective intervenors via "affidavit or other evidence [of]

specific facts". *Id*. at 733. Additionally, prospective intervenors must establish that their interests in litigation fall within the "zone of interests protected by" the relevant statute. *See Ass'n of Battery Recyclers, Inc. v. EPA*, 716 F. 3d 667, 674 (D.C. Cir. 2013) (internal quotations omitted). Harris County has provided detailed descriptions of the particulate matter related harms they are experiencing in their comments on the Rule.[5]

Local governmental intervenors have a compelling interest in defending EPA's authority to regulate pollutants through NAAQS under the Clean Air Act. 42 U.S.C. § 7409. The Clean Air Act requires EPA to adopt health standards "requisite to protect the public health," "allowing an adequate margin of safety." 42 U.S.C. § 7409(b)(1). Reducing the particulate matter standards will enable and intensify the harms that particulate matter poses to human health and the environment in Harris County, whereas allowing EPA to regulate particulate matter will help diminish those harms. The County's interests in defending the rule's increased health protections will be prejudiced if they are not allowed to intervene. *See Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015) (intervention warranted where petitioners' challenge would "remove" the "benefit[s]" of the rule).

---

[5] Comment submitted by Attorney's Office, Harris County, Texas (Apr. 2, 2023), EPA-HQ-OAR-2015-0072-2304.

### C.    The County's interests may not be adequately represented by EPA.

The County satisfies its "minimal" burden to show that Respondents' representation "'may be' inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Movants need not "predict now the specific instances" in which conflicts may arise, *NRDC v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977); a "potential conflict," *Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986); or a "possibility of disparate interests" is sufficient, *Costle*, 561 F.2d at 912.

This court "ha[s] often concluded … governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); see also *Costle*, 561 F.2d at 913 (holding that industry intervenors' interests may not be adequately represented by EPA and that intervention as a matter of right is thus justified). That is especially true here, where it is possible that EPA may take positions here regarding stays, abeyances, remedies, or rehearing that would harm the County's interests.

The County's interests and experience with local air quality issues provide it with a unique and distinctive perspective on the issues at stake. The County operates its own air quality monitors, prosecutes its own enforcement actions, intervenes in air permitting hearings, litigates air pollution matters,[6] and participates in a number

---

[6] E.g. *Harris County v. TCEQ*, D-1GN-001116, Travis County 126th District Court (filed Feb. 21, 2024) (challenging TCEQ's 2024 standard permit for concrete batch

of local and regional entities concerning air quality[7]. As a result, they respectfully submit that the Court's adjudication will be assisted by hearing from local perspectives of the Clean Air Act's public health protections.

The County will "focus on points not made or adequately elaborated upon in ... [EPA's] brief, although relevant to the issues before this court." D.C. Cir. R. 28(d)(2).

## II.    Statement of interest and grounds.

Harris County residents live, work, and recreate in areas with particulate matter levels that exceed the level the Final Rule establishes, and weakened particulate matter standards would prolong their exposure to harmful pollution. *See* Declaration of Dr. Latrice Babin. Exhibit 1.

Harris County has a vested interest in keeping all its residents safe from air pollution, but especially its minority communities because those communities are disproportionately impacted by pollution. Harris County's population is about 20.6% Black and 44.6% Hispanic or Latino. $PM_{2.5}$ pollution disproportionately impacts Black and Hispanic populations, which on average experience "higher $PM_{2.5}$

---

plants); *Harris County v. TCEQ*, D-1GN-001116, Travis County 345th District Court (filed Aug. 15, 2022) (challenging TCEQ's 2021 standard permit for concrete batch plants); *Utah v. EPA*, No. 23-1157, DC Cir (Harris County and states allowed to intervene to defend EPA Good Neighbor Plan rule, Aug. 4, 2023).
[7] For instance, Harris County belongs to the Houston-Galveston Area Council ("HGAC") and the National Association of Clean Air Agencies ("NACAA").

exposure and $PM_{2.5}$-related health risks than non-Hispanic White populations." 89 Fed. Reg. 45, 16204. Evidence of health risk disparities also include $PM_{2.5}$-associated hypertension and mortality. *Id.* at 16235. For instance, within Harris County, concrete batch plants contributing to primary $PM_{2.5}$ emissions are disproportionately located in predominately Hispanic and Black communities.[8]

Harris County seeks to intervene to oppose any attempts by Petitioner to have the Final Rule weakened. Fed. R. App. P. 15(d). Petitioners are likely to seek to weaken the protectiveness of the Final Rule. Such a weakening would allow exposure of the County's residents to levels of particulate matter pollution that—according to EPA, its independent science advisors, and the nation's leading medical stories—endangers their health and welfare. Harris County has a strong interest in protecting its residents' health and ability to enjoy everyday activities in their communities, and strong interests in preventing weakening of the regulations governing the maximum level of particulate matter pollution allowed in the air that its residents breathe.

---

[8] Concrete batch plants in Harris County are a major pollution source, contributing between 38 and 111 tons of primary $PM_{2.5}$ emissions. Concrete batch plants in Harris County are disproportionately located in census tracts with more low-income, Hispanic, and Black populations, thereby raising important environmental justice questions. Nikoloas Zirogiannis, April Byrne, Alex J. Hollingsworth, and David M. Konisky, *Polluting Under the Radar: Emissions, Inequality, and Concrete Batch Plants in Houston*, 57 Env't. Sci. Tech. 11357 (2023).

Thus, Harris County has a clear "interest" in this matter within the meaning of the Federal Rule of Appellate Procedure 15(d). Further, that interest and the injury Harris County residents face from a weakening of reversal of the Final Rule are more than sufficient to satisfy the requirements of Article III standing.

## III.  Harris County's intervention is warranted.

Harris County's interests would not be adequately represented in the absence of intervention. *Dimond v. District of Columbia*, 792 F. 2d 179, 192-94 (D.C. Cir. 1986). The Petitioners' interpretations of the factual and legal issues in this case may differ from Harris County's interpretation. For instance, the County supports EPA's decision to revise and lower the national ambient air quality standards for $PM_{2.5}$. The prior primary annual $PM_{2.5}$ standard of 12 $\mu g/m^3$ is not strong enough to protect human health and public welfare. Without Harris County's intervention, the Court will only hear arguments from Petitioners and the EPA. For example, the State of Texas is not representing the interests of all of Texas. Harris County cannot rely on the State to make all arguments that the County believes should be advanced to protect its and our residents' interests.

Harris County respectfully submits that its views on will be of assistance to the Court. A party seeking to intervene "may also be likely to serve as a vigorous and helpful supplement to EPA's defense". *Nat. Res. Def. Council v. Costle*, 561 F. 2d 904, 912 (D.C. Cir. 1977). The County's residents live and work in areas with

particulate matter pollution, which offers a different perspective from the one EPA may be able to provide.

Harris County's participation as an intervenor in support of EPA will not delay the proceedings or prejudice any party. This motion to intervene is being timely filed within 30-day period allowed under Federal Rule of Appellate Procedure 15(d). The Court has not yet scheduled oral argument or established a briefing schedule. Harris County's participation will not undermine the efficient and timely adjudication of this case.

## CONCLUSION

Thus, Harris County has met the requirements for intervention. The County has an interest relating to the subject matter of this action and legitimate grounds for seeking to participate in the case. This motion is also timely filed and granting it will not delay the proceedings or prejudice any party. Therefore, Harris County respectfully requests leave to intervene in the above-captioned petition for review, and in any other cases—including later filed ones, involving the same agency except for any filed by the County.

Respectfully submitted,

**Christian D. Menefee**
Harris County Attorney

**Jonathan Fombonne**
First Assistant County Attorney

**Tiffany Bingham**
Managing Counsel, Affirmative Litigation and Special Projects and Environmental

by:   */s/ Sarah Jane Utley*
**Sarah Jane Utley**
Environmental Division Director
Texas Bar No. 24042075
Federal (Southern District) No. 737952
Sarah.Utley@cao.hctx.net

**Elizabeth Hidalgo**
Assistant County Attorney
Texas Bar No. 24133308
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
713.274.5124 (direct line)


IRVINE & CONNER PLLC
**Charles Irvine**
Texas Bar No. 24055716
Federal (Southern District) No. 675029
charles@irvineconner.com

**Janet Campos**
Texas Bar No. 24096157
Federal (Southern District) No. 3676630
4709 Austin Street
Houston, Texas 77004
713.533.1704

**ATTORNEYS FOR HARRIS COUNTY, TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing motion was filed on April 5, 2024 with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the Court's CM/ECF system and that, therefore, service was accomplished upon counsel of record by the Court's system.

Dated:    April 5, 2024                    */s/ Sarah Utley*
                                           Sarah Utley

## CERTIFICATE OF PARTIES

Pursuant to D.C. Circuit Rule 27(a)(4) and 28(a)(1)(A), I certify that the parties to this case are set forth below.

Petitioners: Kentucky, West Virginia, Alabama, Alaska, Arkansas, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Louisiana, Mississippi, Missouri, Montana, Nebraska, North Dakota, Ohio, Oklahoma, South Carolina, South Dakota, Tennessee, Utah, and Wyoming, in No. 24-1050; Chamber of Commerce of the United States of America, American Chemistry Council, American Forest & Paper Association, American Petroleum Institute, American Wood Council, National Association of Manufacturers, National Mining Association, and Portland Cement Association, in No. 24-1051; Texas and the Texas Commission on Environmental Quality, in No. 24-1052; and President of the Arizona State Senate Warren Petersen, Speaker of the Arizona House of Representatives Ben Toma, and Arizona Chamber of Commerce and Industry, in No. 24-1073.

Respondents: United States Environmental Protection Agency ("EPA") and Michael S. Regan, in his official capacity as Administrator of the EPA.

Intervenors: Citizens for Pennsylvania's Future, Conservation Law Foundation, Natural Resources Defense Council ("NRDC"), Northeast Ohio Black Health Coalition, Rio Grande International Study Center, and Sierra Club in No. 24-1050 (and consolidated cases).

Amici Curiae: No parties have sought amici curiae status at the time of this filing.

Dated:     April 5, 2024                    */s/ Sarah Utley*
                                            Sarah Utley

## CERTIFICATE OF COMPLIANCE

I hereby certify that the motion complies with Fed. R. App. P. 27(d)(2)(A) because it contains 2,633 words, excluding the parts of the motion exempt under Fed. R. App. 32(f), according to the count of Microsoft Word.

I further certify that this filing complies with the requirements of Fed. R. App. P. 27(d)(1)(E) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

Dated:    April 5, 2024              */s/ Sarah Utley*
                                      Sarah Utley

# EXHIBIT 1

<u>**DECLARATION OF DR. LATRICE BABIN IN SUPPORT OF
MOTION FOR INTERVENTION**</u>

I, Dr. Latrice Babin, declare as follows:

1.       I am Executive Director of Harris County Pollution Control Services Department (PCS).  I attended Texas Southern University where I obtained my Bachelor of Science in Biology/ Chemistry in 1992 and my Doctorate in Environmental Toxicology in 2008. I began my career with Harris County 29 years ago and held the following positions within PCS and its predecessor departments: Field Investigator, Laboratory Chemist, Water Quality Permit Specialist, Environmental Toxicologist, Deputy Director.  I am involved with air quality issues at the local, state and federal level and am the Air Toxics Co-Chair And National Co- Vice President (Local Air Agencies) for the National Association of Clean Air Agencies.

2.       I submit this declaration in support of the motion of Harris County, Texas to intervene as respondents with respect to all petitions supporting the *Reconsideration of the National Ambient Air Quality Standards for Particulate Matter*, 89 Fed. Reg. 45, 16202 (March 6, 2024), except for any petitions that may be filed challenged the Final Rule as insufficiently stringent.

**PARTICULATE MATTER IN HARRIS COUNTY**

3.       At a population of over 4.8 million residents[1], Harris County is the most populous county in Texas and along the coast of the Gulf of Mexico, as well as the third most populous county in the nation. Harris County is home to the petrochemical capital the nation, the Houston Ship Channel and the nation's largest port for waterborne tonnage. The Houston area

---

[1] U.S. Census Bureau, 2023 Population Estimates.

also houses hundreds of concrete batch plants and other particulate matter (PM) producing facilities.

4.      Harris County has suffered from poor air quality for decades and PM pollution is of specific concern. Harris County, which is the largest county in the Houston-Galveston-Brazoria area, is very narrowly in attainment for the 2012 Annual fine PM ("$PM_{2.5}$") standard. Under 2012 Annual $PM_{2.5}$ standard, Harris County was designated as "unclassified/attainment". Our region measured 11.4 micrograms of fine particle air pollution from 2020 to 2022. Under the EPA's revised standards, a region's allowed annual threshold of $PM_{2.4}$ pollution reduced from 12 micrograms per cubic meter to 9 micrograms—meaning Harris County will be in nonattainment status.

5.      Harris County is experiencing increasingly greater PM pollution. Public Health Watch conducted a study that shows that Texans need extra protection from particle pollution.[2] The study showed that of the locations studied, Harris County had the highest concentration of $PM_{2.5}$. As particle pollution increases, so do the negative health impacts on residents. For instance, Harris County had the most deaths in 2016 from particle pollution: 1,372, or 31 people per 100,000. Furthermore, throughout 2023 unhealthy reports of air quality in Harris County have shown $PM_{2.5}$ as the primary pollutants diminishing the air quality.

**PARTICULATE MATTER IMPACTS TO HARRIS COUNTY OPERATIONS**

6.      A safe threshold does not exist to breathe in fine particles.[3] Scientific evidence shows that particle pollution is associated with increased mortality from all causes—including

---

[2] Savanna Strott, *Fine Particles Kill Thousands of Texans a Year. It's likely to Get Worse*, Public Health Watch (October 23, 2023). https://publichealthwatch.org/2023/10/23/texas-fine-particles-pollution-health-deaths/#:~:text=A%20Public%20Health%20Watch%20analysis,microns%20in%20width%20or%20smaller.
[3] American Lung Association, *Particle Pollution*,

cardiovascular disease, respiratory disease, and lung disease.[4] "Breathing high levels of particle pollution day in and day out can be deadly". Year-round exposure to particle pollutions has been linked to increased risk of heart attacks and strokes, higher likelihood of getting lung cancer or developing diabetes, neurological effects in adults, increased risk of death from cardiovascular disease, and many other health impacts.[5] However, even short-term exposure to particle pollution can have negative health impacts. "Short term exposure, such as from peaks or spikes in particle pollution that lasts from hours to days, can kill".[6] Short-term increases in particle pollution is linked to increased mortality in infants; increased hospital admissions for cardiovascular disease, COPD, and asthma among children; and increased severity of asthma attacks in children.[7] Harris County Public Health ("HCPH") is the department designated with the responsibility of providing comprehensive health services and programs to our community. HCPH programs include community outreach activities for disease prevention that are directly and indirectly related to environmental risks, including particle pollution. These programs engage the community with outreach, education, and initiatives, including asthma control programs and services (Open Airways & Kickin' Asthma; Breathe Well, Live Well; and Home Visits), and the Diabetes Prevention Program, all of which target health issues that have a positive association to PM exposure. Elevated particulate matter levels in Harris County increase the need and costs for these HCPH programs and services.

7.     PCS is the department designated to inspect facilities within the County for compliance with air quality laws and regulations, review air permit applications, and submit comments to the TCEQ and EPA on regulatory actions. As part of its mission, PCS conducts

---

[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

investigations, both routine and complaint initiated. When appropriate during these investigations PCS issues Violation Notices and refers cases to the Harris County Attorney's Office or the District Attorney's Office for civil or criminal enforcement. Due to community concern about air pollution, including PM, PCS implemented a Community Air Monitoring Program. The air monitoring program measures pollution levels across Harris County, identifies emission sources that potentially impact the community, and informs the public on priorities related to clean air. Particulate matter levels are measured by the air monitoring program, and as PM continues to increase so does the need for PCS and its role as regulator and enforcer of air quality regulations.

8.    The direct and substantial interests discussed above demonstrate the continued harm to Harris County from elevated particulate matter levels, which would continue if challenges to EPA's Reconsideration of the National Ambient Air Quality Standards for Particulate Matter are successful.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

So declared this 5 day of April, 2024.

Dr. Latrice Babin
Executive Director
Harris County Pollution Control

4