# In the United States Court of Appeals
# for the District of Columbia Circuit

COMMONWEALTH OF KENTUCKY and
STATE OF WEST VIRGINIA, *et al.*,

*Petitioners*

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, *et al.*,

*Respondents*

ALLIANCE OF NURSES FOR HEALTHY ENVIRONMENTS, *et al.*,

*Intervenors*

———————————————

On Petitions for Review of a Final Action
of the U.S. Environmental Protection Agency

———————————————

**STATE PETITIONERS' RESPONSE IN SUPPORT
OF EPA & ADMINISTRATOR ZELDIN'S MOTION FOR VACATUR**

**RUSSELL COLEMAN**
**Attorney General of Kentucky**

Matthew F. Kuhn
  *Solicitor General*
Jacob M. Abrahamson
  *Deputy Solicitor General*
Lindsey R. Keiser
  *Assistant Attorney General*

Office of the Kentucky
Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jacob.Abrahamson@ky.gov
Lindsey.Keiser@ky.gov

*Counsel for Petitioner*
*Commonwealth of Kentucky*

(Additional counsel below)

**JOHN B. McCUSKEY**
**Attorney General of West Virginia**

Michael R. Williams
  *Solicitor General*

Office of the West Virginia
Attorney General
State Capitol, Bldg 1,
Room E-26
Charleston, West Virginia 25305
Michael.R.Williams@wvago.gov

*Counsel for Petitioner*
*State of West Virginia*

(Additional counsel listed after the signature block.)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................ii

GLOSSARY ............................................................................................vi

INTRODUCTION......................................................................................1

ARGUMENT .............................................................................................2

   I.   The Court should vacate the Final Rule without deciding whether Section 109(b) confers revision authority. .......................3

   II.  Vacatur is the appropriate remedy. ...........................................10

CONCLUSION ........................................................................................13

CERTIFICATE OF COMPLIANCE........................................................23

CERTIFICATE OF SERVICE.................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton,*
521 U.S. 203 (1997)..............................................................5

*Air All. Houston v. EPA,*
906 F.3d 1049 (D.C. Cir. 2018) ........................................9

*Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n,*
988 F.2d 146 (D.C. Cir. 1993) ....................................11, 12

*Am. Pub. Gas Assoc. v. U.S. Dep't of Energy,*
22 F.4th 1018 (D.C. Cir. 2022) .......................................10

*Burlington Truck Lines, Inc. v. United States,*
371 U.S. 156 (1962) ...........................................................5, 7

*Calcutt v. Fed. Deposit Ins. Corp.,*
598 U.S. 623 (2023) ..........................................................4, 7

*Carducci v. Regan,*
714 F.2d 171 (D.C. Cir. 1983) ...........................................8

*City of Port Isabel v. FERC,*
130 F.4th 1034 (D.C. Cir. 2025) ......................................11

*Clark v. Sweeney,*
607 U.S. ---, 2025 WL 3260170 (2025)..........................8, 10

*Ctr. for Biological Diversity v. EPA,*
141 F.4th 153 (D.C. Cir. 2025) ..........................................9

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,*
146 F.4th 1144 (D.C. Cir. 2025) ........................................4

*Est. of Insinga by Gilmore v. Comm'r,*
149 F.4th 709 (D.C. Cir. 2025) ........................................5, 7

*FDA v. Wages & White Lion Investments, L.L.C.*,
604 U.S. 542 (2025) .............................................................. 6, 7

*Greenlaw v. United States*,
554 U.S. 237 (2008) ................................................................. 8

*Heartland Reg'l Med. Ctr. v. Sebelius*,
566 F.3d 193 (D.C. Cir. 2009) .............................................. 11

*Heating, Air Conditioning & Refrigeration Dist. Int'l v. EPA*,
71 F.4th 59 (D.C. Cir. 2023) ................................................... 9

*Heffernan v. City of Paterson*,
578 U.S. 266 (2016) ............................................................... 10

*Int'l Union, UMW v. FMSHA*,
920 F.2d 960 (D.C. Cir. 1990) .............................................. 11

*Kansas City v. Dep't of Hous. & Urb. Dev.*,
923 F.2d 188 (D.C. Cir. 1991) ................................................. 5

*Ky. Mun. Energy Agency v. FERC*,
45 F.4th 162 (D.C. Cir. 2022) ................................................. 3

*Loper Bright Enterps. v. Raimondo*,
603 U.S. 369 (2024) ................................................................. 5

*Mass. Trs. of E. Gas & Fuel Assocs. v. United States*,
377 U.S. 235 (1964) ................................................................. 7

*Matson Nav. Co. v. Dep't of Transp.*,
770 F. Supp. 3d 44 (D.D.C. 2025) ........................................... 5

*N. Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012) ............................................. 5, 6

*N.J. Conservation Found. v. FERC*,
111 F.4th 42 (D.C. Cir. 2024) ............................................... 13

iii

*Niz-Chavez v. Garland,*
593 U.S. 155 (2021)..................................................................2

*North Carolina v. EPA,*
531 F.3d 896 (D.C. Cir. 2008)....................................12, 13

*Sec. & Exch. Comm'n v. Chenery Corp.* (*Chenery I*),
318 U.S. 80 (1943)...................................................................4

*Sec. & Exch. Comm'n v. Chenery Corp.* (*Chenery II*),
332 U.S. 194 (1947).................................................................4

*Sugar Cane Growers Co-op. of Fla. v. Veneman,*
289 F.3d 89 (D.C. Cir. 2002).............................................12

*United States v. Sineneng-Smith,*
590 U.S. 371 (2020)..................................................4, 8, 10

*Waterkeepers Chesapeake v. FERC,*
56 F.4th 45 (D.C. Cir. 2022)..............................................11

**Statutes**

28 U.S.C.:
§ 2253(c)...................................................................................9

§ 2254(b)...................................................................................9

42 U.S.C.:
§ 7409(b)...............................................................3, 4, 7, 10

§ 7409(d)(1) .......................................................................1, 3

§ 7607(d)(7)..............................................................................9

§ 7607(d)(9)..............................................................................3

## Other Authorities

Henry J. Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*,
1969 Duke L.J. 199 ........................................................................ 6

Kevin M. Stack, *The Constitutional Foundations of* Chenery,
116 Yale L.J. 952 (2007) ............................................................... 6

## Regulations

89 Fed. Reg. 16,202 (Mar. 6, 2024) ..................................... 1, 11

85 Fed. Reg. 82,684 (Dec. 18, 2020) ......................................... 13

# GLOSSARY

EPA                 United States Environmental Protection Agency

NAAQS               National Ambient Air Quality Standards

PM                  Particulate Matter

$\mu g/m^3$         Micrograms per cubic meter

JA                  Joint Appendix

Act                 Clean Air Act

ISA                 Integrated Science Assessment

PSD                 Prevention of Significant Deterioration

SIP                 State Implementation Plan

## INTRODUCTION

Petitioners challenge the "Reconsideration of the National Ambient Air Quality Standards for Particulate Matter," 89 Fed. Reg. 16,202 (Mar. 6, 2024) (effective May 6, 2024) (Final Rule). Based on only a short-circuited reconsideration process, the Final Rule revised the primary annual $PM_{2.5}$ NAAQS substantially down from 12 μg/m$^3$ to 9 μg/m$^3$—the most stringent level ever. The Final Rule is imposing, and will continue to impose, immediate, significant regulatory costs on the States, as they must struggle to implement the Final Rule and comply with related permitting obligations. State Petitioner Br. at 15–16, 18–20, ECF No. 2079737. Yet in adopting the Final Rule, EPA willfully blinded itself to costs like these.

Respondents the Environmental Protection Agency and Administrator Zeldin have moved the Court to vacate the Final Rule. EPA now recognizes that Section 109(d)(1) requires the agency to conduct a "thorough review," which it did not do, before revising the NAAQS. EPA Motion for Vacatur at 11–15, ECF No. 2147050. And even if EPA had reconsideration authority, Respondents admit that they failed to consider "the distinct costs associated with revising the NAAQS mid-cycle." *Id.* at 18–21. So Respondents now confess that their former defense of the Final Rule was in error, and they ask the Court to vacate the Final Rule before EPA's February 7, 2026 area designation deadline. *Id.* at 1.

State Petitioners[*] agree with EPA's admissions, and they offer two further points in support of EPA's request. *First*, this Court should not resuscitate the Final Rule by entertaining any separate statutory basis for it that EPA did not rely on in its rulemaking (or for that matter, in its now-withdrawn brief in this Court). And *second*, the Court should vacate the Final Rule outright (rather than simply remand) in light of the costly effects to State Petitioners of complying with a rule that is not grounded in EPA's statutory authority.

## ARGUMENT

Now that EPA agrees with Petitioners that the Final Rule is unlawful, the Court should vacate it. State Petitioners offer just two short points in addition to those made in Respondents' motion.

*First*, in both administrative-law cases and litigation generally, federal courts must simply weigh and decide the arguments that the parties preserve and present. That foundational rule holds even when the federal government (or one of its agencies) fails to raise an argument to support its action. After all, "[i]f men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). The Final Rule must therefore rise or fall based only on the authority EPA asserted in promulgating it: Section 109(d)(1).

---

[*] State Petitioners are petitioners in appeal numbers 24-1050 and 24-1052.

The Court should not consider whether Section 109(b) might also justify the Final Rule.

*Second*, because EPA failed its statutory obligations (as it now admits), State Petitioners should not face the high costs of complying with an unlawful rule. Vacatur is the "standard course of action," *Ky. Mun. Energy Agency v. FERC*, 45 F.4th 162, 179 (D.C. Cir. 2022); indeed, the Clean Air Act allows the Court to "reverse" EPA's action that are "not in accordance with law" or "in excess of statutory . . . authority." 42 U.S.C. § 7607(d)(9)(A), (C). And the standard course proves to be the right one here.

## I. The Court should vacate the Final Rule without deciding whether Section 109(b) confers revision authority.

Start with the scope of what the Court should decide in considering EPA's motion for vacatur and the petitions for review.

In issuing the Final Rule, EPA justified its action based on only Section 109(d)(1). It did not root the Final Rule in Section 109(b) as a standalone authority. EPA's motion to vacate, however, preemptively (and correctly) rejects an argument that Section 109(b) might provide it authority to reconsider NAAQS without a thorough review. EPA Motion for Vacatur at 15–18, ECF No. 2147050. That legal theory, however, is absent from the Final Rule and the now-withdrawn brief defending it. *See* Withdrawn EPA Response Brief at 36, ECF No. 2079971 (describing Section 109(b) as containing "[t]he *process* for revising standards"). As EPA notes, Section 109(b) was briefly discussed during oral argument. EPA Motion

3

for Vacatur at 15–16, ECF No. 2147050. But EPA now acknowledges, via sworn declaration, that it never purported to rely on Section 109(b) for reconsideration authority. *Id.* at 17 (citing Szabo Decl. ¶ 40).

The Court should decline to reach the Section 109(b) issue for two related reasons. The first is the "simple but fundamental rule of administrative law" that courts reviewing an agency's discretionary decision "must judge the propriety of such action solely by the grounds invoked by the agency." *Sec. & Exch. Comm'n v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 196 (1947). And the second is the broader principle that courts "wait for cases to come to them, and when cases arise, courts normally decide only questions presented by the parties." *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020) (citation omitted) (cleaned up).

**1.** Take the *Chenery* principle first. It directs that an agency action "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Sec. & Exch. Comm'n v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 95 (1943). Put another way, "an agency's discretionary order may be upheld . . . only on the same basis articulated in the order by the agency itself." *Calcutt v. Fed. Deposit Ins. Corp.*, 598 U.S. 623, 624 (2023) (citation omitted) (cleaned up). This Court's "task" is thus "review[ing] the agency's decision" alone—not "appellate counsel's *post hoc* rationalizations for agency action." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 146 F.4th 1144, 1167 (D.C. Cir. 2025) (quoting *Burlington Truck Lines, Inc. v. United*

4

*States*, 371 U.S. 156, 168–69 (1962)). The Court's task "ends when an error of law is laid bare, and at that point the matter once more goes to the agency for reconsideration." *Est. of Insinga by Gilmore v. Comm'r*, 149 F.4th 709, 719 (D.C. Cir. 2025) (citation omitted) (cleaned up).

This Court has squarely held that *Chenery* "applies to statutory interpretations." *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 860 (D.C. Cir. 2012) (citing *Kansas City v. Dep't of Hous. & Urb. Dev.*, 923 F.2d 188, 192 (D.C. Cir. 1991)). To be sure, some have questioned whether *Chenery* "continues to have force in cases involving questions of statutory interpretation after *Loper Bright*." *Matson Nav. Co. v. Dep't of Transp.*, 770 F. Supp. 3d 44, 69 n.7 (D.D.C. 2025). In fact, that question came up at oral argument. Yet nothing in *Loper Bright* suggests that requiring "courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch," means ignoring the good-government rule *Chenery* prescribed. *Loper Bright Enterps. v. Raimondo*, 603 U.S. 369, 403 (2024); *see also Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent.").

Indeed, *Loper Bright* is ultimately an interpretation of the Administrative Procedure Act's judicial-review provisions. 603 U.S. at 391–96. And as this Court has held, the *Chenery* principle predates the APA and is a "pre-existing administrative law requirement[]," applicable outside the

APA's statutory constraints. *N. Air Cargo*, 674 F.3d at 860. Plus, exempting agency statutory interpretations from *Chenery*'s reach would undermine "the now-bedrock principle that an agency action cannot stand 'unless the grounds upon which the agency acted in exercising its powers'"—here the asserted statutory basis for the Final Rule—"'were those upon which its action can be sustained.'" *FDA v. Wages & White Lion Investments, L.L.C.*, 604 U.S. 542, 587 (2025) (citation omitted). And *White Lion* reiterated that foundational point after *Loper Bright*.

At bottom, to apply *Chenery* is to "improve the administrative process in general." Henry J. Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199, 209–10. Some even assign constitutional weight to *Chenery*'s application. *See, e.g.*, Kevin M. Stack, *The Constitutional Foundations of* Chenery, 116 Yale L.J. 952, 958–59 (2007) ("It provides assurance that accountable agency decision-makers, not merely courts and agency lawyers, have embraced the grounds for the agency's actions, and that the agency decision-makers have exercised their judgment on the issue in the first instance."). Whatever its roots, *Chenery* ensures that the time-consuming, public-facing rulemaking process sets the legal bounds of follow-on litigation. Because of *Chenery*, petitioners know what arguments they can raise. Perhaps more important here, they also know what arguments they have to overcome.

Abandoning *Chenery* in this context would allow courts to change the terms of the rulemaking process and follow-on legal challenges at the

last minute and without the agency even pressing the relevant argument. In short, "[f]or the courts to substitute their or counsel's discretion for that of the [agency] is incompatible with the orderly functioning of the process of judicial review." *Burlington Truck Lines*, 371 U.S. at 169.

The few recognized exceptions to *Chenery* do not apply here. Courts decline to apply its remand rule only when "there 'is not the slightest uncertainty as to the outcome' on remand" or "it 'would be pointless.'" *Est. of Insinga*, 149 F.4th at 721–22 (citing *Calcutt*, 598 U.S. at 629; *White Lion*, 604 U.S. at 590). But applying *Chenery* is only "pointless" if "the agency's error 'had no bearing on the procedure used or the substance of [the] decision reached.'" *White Lion*, 604 U.S. at 590 (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964)).

Of course, both procedure and substance are at the heart of this dispute over "the thorough review process" that "is critical to the statute's design." EPA Motion for Vacatur at 15, ECF No. 2147050. Remand to EPA for a thorough review will fundamentally differ from the process that led to the Final Rule—especially given that the agency has never asserted, and has now expressly disclaimed, standalone authority to reconsider NAAQS without a thorough review under Section 109(b). And until EPA conducts the thorough review in the first instance, neither the Court nor the parties can speak with certainty of the decision EPA will reach. *See* State Petitioners' Opening Br. at 34–38, ECF No. 2079737 (describing persistent scientific uncertainties in setting the appropriate PM NAAQS).

**2.** *Chenery*'s force is amplified here by the party-presentation principle. It means that the Court must "rely on the parties to frame the issues for decision and assign to [itself] the role of neutral arbiter of matters the parties present." *Sineneng-Smith*, 590 U.S. at 375 (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). So when a party has not made an "argument entitling [it] to relief," the Court should not make and sustain that argument itself. *Id.* at 375–76. "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (Scalia, J.).

The Supreme Court reaffirmed its adherence to the party-presentation principle just last week. *See Clark v. Sweeney*, 607 U.S. ---, 2025 WL 3260170 (2025) (per curiam). It summarily reversed an unpublished habeas decision that "transgressed the party-presentation principle by granting relief on a claim that [the petitioner] never asserted and that the State never had the chance to address." *Id.* at *2. The Supreme Court directed the Fourth Circuit simply to "analyze the ineffective-assistance claim that [the petitioner] asserted." *Id.*

Although *Clark* did not turn on the particular context in which the case arose, it's worth noting that the case considered the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). That statute is quite careful in limiting which claims a federal court can reach—for example,

through requirements like state-court exhaustion and a certificate of appealability to challenge the dismissal of a claim on appeal. 28 U.S.C. § 2254(b)(1)(A); 28 U.S.C. § 2253(c).

Petitioners in this context—judicial review under the Clean Air Act—are likewise subject to strict preservation requirements. "Only an objection to a rule or procedure which was raised with reasonable specificity during the period for public comment (including any public hearing) may be raised during judicial review." 42 U.S.C. § 7607(d)(7)(B). That provision operates as a bar on non-preserved objections. *See, e.g.*, *Ctr. for Biological Diversity v. EPA*, 141 F.4th 153, 188 (D.C. Cir. 2025); *Heating, Air Conditioning & Refrigeration Dist. Int'l v. EPA*, 71 F.4th 59, 65 (D.C. Cir. 2023) (holding that courts "may not consider" a claim that "had to be made first to the EPA"). It also "facilitate[s] judicial review by assuring finality and creating an agency record." *Air All. Houston v. EPA*, 906 F.3d 1049, 1066 (D.C. Cir. 2018). Put simply, as in AEDPA habeas proceedings, the battle lines for these Clean Air Act challenges must be drawn during the rulemaking process, not after a petition for review has been filed—much less after the agency's merits brief has been filed.

If Petitioners had tried to raise an issue for the first time here, this Court would rightly reject that effort. But the limit on introducing brand-new theories should not run only against Petitioners. "After all, in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson*, 578 U.S. 266, 272 (2016). Once the rulemaking

process has winnowed down the agency's reasons for its decision and the preserved objections to that decision, the Court should "decide only questions presented by the parties." *Sineneng-Smith*, 590 U.S. at 376 (citation omitted). The party-presentation principle requires just that. *Clark*, 2025 WL 3260170, at *1 ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation omitted)).

*   *   *

This Court should vacate the Final Rule after addressing only the grounds on which EPA has relied–not Section 109(b) or other as-yet-unidentified provisions a careful thinker might summon. Both *Chenery* and the party-presentation principle mean that this argument—one EPA has not asserted as a source of authority for issuing the Final Rule—cannot be a basis for denying the petitions for review. To do otherwise would grant EPA an expansive power it does not want based on arguments it never made.

## II.  Vacatur is the appropriate remedy.

With the questions raised by the parties in mind, the Court should also decide that vacatur is the appropriate remedy.

"'[V]acatur is the normal remedy' when a rule is found unlawful." *Am. Pub. Gas Assoc. v. U.S. Dep't of Energy*, 22 F.4th 1018, 1030 (D.C. Cir. 2022) (citation omitted). Still, under this Court's caselaw, "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)

and the disruptive consequences of an interim change that may itself be changed.'" *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (quoting *Int'l Union, UMW v. FMSHA*, 920 F.2d 960, 967 (D.C. Cir. 1990)).

That decision is made simpler where, as here, an agency "had no statutory authority" to support its action because "there is no 'possibility that [it] may find an adequate explanation for its actions' on remand." *Waterkeepers Chesapeake v. FERC*, 56 F.4th 45, 49–50 (D.C. Cir. 2022) (citation omitted). This case is not one where "an agency may be able readily to cure a defect in its explanation of a decision." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198 (D.C. Cir. 2009). Among other things, EPA skipped a "fundamental procedural step"—a thorough review—and "there is no way [here] for [the] agency to rehabilitate its decision to skip a procedural step." *City of Port Isabel v. FERC*, 130 F.4th 1034, 1037 (D.C. Cir. 2025) (citation omitted). EPA was right to ask for vacatur, and the Court should grant that request.

The other *Allied-Signal* factors follow in line. First, as noted above (at 7), it is impossible for the Court to determine what result might come from the required "thorough review" process. A key feature of any "thorough review" is an Integrated Science Assessment, where EPA gathers and evaluates all the relevant science underlying its ultimate decision. EPA here used the 2019 ISA as "the broad scientific foundation" for its early reconsideration. Final Rule, 89 Fed. Reg. 16,202, 16,223 (Mar. 6,

2024), JA0184. But it did not begin that process anew, instead gathering "some studies that became available after the literature cutoff date of the 2019 ISA" in a supplement. *Id.* at 16,219, JA0180. If the Court agrees that EPA lacked statutory authority to alter that process, it cannot assume that the "thorough review" required by the statute would garner the same result. Instead, "EPA must redo its analysis from the ground up." *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008).

Nor would "the consequences of vacating . . . be quite disruptive." *Allied-Signal*, 988 F.2d at 151. Courts hesitate to grant vacatur when "[t]he egg has been scrambled and there is no apparent way to restore the status quo ante." *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002). But the opposite is true here.

As EPA notes, vacating the Final Rule "would prevent disruption and unnecessary additional burdens to regulated parties and EPA alike" by simply applying the NAAQS that EPA deemed sufficient after its last thorough review. EPA Motion for Vacatur at 22–23, ECF No. 2147050. Vacatur would thus work to immediately alleviate the "individual permitting challenges" State Petitioners face. State Petitioners' Opening Br. at 19–20, ECF No. 2079737 (citing declarations describing the costs of "apply[ing] the revised NAAQS to future permit applications *and* pending, completed applications"). It would also spare State Petitioners from the impending process of submitting revised infrastructure SIPs and ensuring that newly designated nonattainment areas are in compliance. *See*

*id.* at 18–19 (citing declarations describing "the high costs of addressing nonattainment"). And there is little "risk of interfering with environmental protection" here. *North Carolina*, 531 F.3d at 929. The 2013 standards, retained after the most recent thorough review, protect the public health. *See* 2020 Action, 85 Fed. Reg. 82,684, 82,718 (Dec. 18, 2020), JA 1290; EPA Motion for Vacatur at 23, ECF No. 2147050.

With vacatur, the Court can best preserve the status quo ante while EPA engages in the through process required by the Clean Air Act. The alternative—requiring State Petitioners to spend significant taxpayer money and time to comply with an unlawful rule—is not demanded by *Allied-Signal*. And even if one could find some "disruptive consequence" from vacatur, that disruption will preclude vacatur of a "pervasively deficient agency action . . . only in rare instances." *N.J. Conservation Found. v. FERC*, 111 F.4th 42, 64 (D.C. Cir. 2024). There's nothing exceptional here, so vacatur is appropriate.

## CONCLUSION

The State Petitioners' petitions for review should be granted, and the Final Rule should be vacated.

DATED:    December 4, 2025

Respectfully submitted,

**RUSSELL COLEMAN**
**Attorney General of Kentucky**

/s/ Jacob M. Abrahamson
Matthew F. Kuhn
 *Solicitor General*
Jacob M. Abrahamson
 *Deputy Solicitor General*
Lindsey R. Keiser
 *Assistant Attorney General*
Office of the Kentucky
Attorney General
1024 Capital Center Drive
Suite 200
Frankfort, Kentucky 40601
(502) 696-5300
Matt.Kuhn@ky.gov
Jacob.Abrahamson@ky.gov
Lindsey.Keiser@ky.gov

*Counsel for Petitioner*
*Commonwealth of Kentucky*

**JOHN B. McCUSKEY**
**Attorney General of**
**West Virginia**

/s/ Michael R. Williams
Michael R. Williams
 *Solicitor General*
Office of the West Virginia
Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, West Virginia 25305
(681) 313-4550
Michael.R.Williams@wvago.gov

*Counsel for Petitioner*
*State of West Virginia*

(Counsel for Additional Petitioners Below)

**STEVE MARSHALL**
**Attorney General of Alabama**

/s/ A. Barrett Bowdre
A. Barrett Bowdre
  *Solicitor General*
Office of the Attorney General
State of Alabama
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Barrett.Bowdre@AlabamaAG.gov

*Counsel for Petitioner*
*State of Alabama*

**STEPHEN J. COX**
**Attorney General of Alaska**

/s/ Thomas Mooney-Meyers
Jenna Lorence
  *Solicitor General*
Thomas Mooney-Meyers
  *Assistant Attorney General*
Environmental Section
Alaska Department of Law
1031 West 4th Avenue, Suite 200
Anchorage, Alaska 99501-1994
(907) 269-5211
Thomas.Mooney-Mey-
ers@alaska.gov

*Counsel for Petitioner*
*State of Alaska*

**TIM GRIFFIN**
**Attorney General of Arkansas**

/s/ Autumn H. Patterson
Autumn H. Patterson
  *Solicitor General*
Office of the Arkansas
Attorney General
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2007
Autumn.Patterson@Arkan-
sasAG.gov

*Counsel for Petitioner*
*State of Arkansas*

**JAMES UTHMEIER**
**Attorney General of Florida**

/s/ Allen Huang
Allen Huang
  *Deputy Solicitor General*
Office of the Attorney General
3507 East Frontage Road
Tampa, Florida 33607
(813) 287-7950
Allen.Huang@myfloridalegal.com

*Counsel for Petitioner*
*State of Florida*

**CHRISTOPHER M. CARR**
**Attorney General of Georgia**

/s/ Stephen J. Petrany
Stephen J. Petrany
  *Solicitor General*
Office of the Georgia
Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Petitioner*
*State of Georgia*

**RAÚL R. LABRADOR**
**Attorney General of Idaho**

/s/ Alan M. Hurst
Alan M. Hurst
  *Solicitor General*
Office of the Idaho
Attorney General
P.O. Box 83720
Boise, Idaho 83720-0010
Tel: (208) 334-2400
Fax: (208) 854-8071
Alan.Hurst@ag.idaho.gov

*Counsel for Petitioner*
*State of Idaho*

**THEODORE E. ROKITA**
**Attorney General of Indiana**

/s/ James A. Barta
James A. Barta
  *Solicitor General*
Office of the Attorney General
IGC South, Fifth Floor
302 West Washington Street
Indianapolis, Indiana 46204
(317) 232-0709
James.Barta@atg.in.gov

*Counsel for Petitioner*
*State of Indiana*

**BRENNA BIRD**
**Attorney General of Iowa**

/s/ Eric H. Wessan
Eric H. Wessan
  *Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Petitioner*
*State of Iowa*

**KRIS KOBACH**
**Attorney General of Kansas**

/s/ Anthony J. Powell
Anthony J. Powell
  *Solicitor General*
Office of Kansas Attorney General
Kris W. Kobach
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Office: (785) 368-8539
Fax: (785) 296-3131
Anthony.Powell@ag.ks.gov

*Counsel for Petitioner*
*State of Kansas*

**LIZ MURRILL**
**Attorney General of Louisiana**

/s/ J. Benjamin Aguiñaga
J. Benjamin Aguiñaga
  *Solicitor General*
Office of the Louisiana
Attorney General
1885 North Third Street
Baton Rouge, Louisiana 70802
(225) 485-2458
aguinagab@ag.louisiana.gov

*Counsel for Petitioner*
*State of Louisiana*

**LYNN FITCH**
**Attorney General of Mississippi**

/s/ Justin L. Matheny
Justin L. Matheny
  *Deputy Solicitor General*
Office of the Mississippi
Attorney General
P.O. Box 220
Jackson, Mississippi 39205-0220
(601) 359-3825
justin.matheny@ago.ms.gov

*Counsel for Petitioner*
*State of Mississippi*

**CATHERINE HANAWAY**
**Attorney General of Missouri**

/s/ Louis J. Capozzi III
Louis J. Capozzi III
  *Solicitor General*
Office of the Attorney General
815 Olive Street, Suite 200
St. Louis, Missouri 63101
(717) 802-2077
Louis.Capozzi@ago.mo.gov

*Counsel for Petitioner*
*State of Missouri*

**AUSTIN KNUDSEN**
**Attorney General of Montana**

/s/ Christian B. Corrigan
Christian B. Corrigan
  *Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
christian.corrigan@mt.gov

*Counsel for Petitioner*
*State of Montana*

**MICHAEL T. HILGERS**
**Attorney General of Nebraska**

/s/ Cody S. Barnett
Cody S. Barnett
  *Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, NE 68508
(402) 471-2683
Cody.Barnett@nebraska.gov

*Counsel for Petitioner*
*State of Nebraska*

**DREW WRIGLEY**
**Attorney General of**
**North Dakota**

/s/ Philip Axt
Philip Axt
  *Solicitor General*
North Dakota Attorney
General's Office
600 East Boulevard Avenue,
Dept. 125
Bismarck, North Dakota 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for Petitioner*
*State of North Dakota*

**DAVE YOST**
**Attorney General of Ohio**

/s/ Mathura Sridharan
Mathura Sridharan
  *Solicitor General*
Ohio Attorney General's Office
30 East Broad Street, Floor 17
Columbus, Ohio 43215
(614) 466-8980
mathura.sridharan@ohioago.gov

*Counsel for Petitioner*
*State of Ohio*

**GENTNER F. DRUMMOND**
**Attorney General of Oklahoma**

/s/ Garry M. Gaskins, II
Garry M. Gaskins, II
  *Solicitor General*
Jennifer L. Lewis
  *Deputy Attorney General*
Oklahoma Office of the
Attorney General
313 Northeast 21st Street
Oklahoma City, Oklahoma 73105
(405) 312-2451
Garry.Gaskins@oag.ok.gov

*Counsel for Petitioner*
*State of Oklahoma*


**MARTY J. JACKLEY**
**Attorney General of**
**South Dakota**

/s/ Emily M. Greco
Emily M. Greco
  *Assistant Attorney General*
South Dakota Attorney
General's Office
1302 East Highway 1889, Suite 1
Pierre, South Dakota 57501
(605) 773-3215
Emily.Greco@state.sd.us

*Counsel for Petitioner*
*State of South Dakota*

**ALAN WILSON**
**Attorney General of**
**South Carolina**

/s/ Joseph D. Spate
Robert D. Cook
  *Chief Counsel*
J. Emory Smith, Jr.
  *General Counsel*
Thomas T. Hydrick
  *Solicitor General*
Joseph D. Spate
  *Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for Petitioner*
*State of South Carolina*

**JONATHAN SKRMETTI**
**Attorney General & Reporter of Tennessee**

/s/ Harrison Gray Kilgore
Harrison Gray Kilgore
  *Strategic Litigation Counsel*
  *and Assistant Solicitor General*
Office of the Attorney General and
Reporter of Tennessee
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 741-7403
Harrison.Kilgore@ag.tn.gov

*Counsel for Petitioner*
*State of Tennessee*

**KEITH G. KAUTZ**
**Attorney General of Wyoming**

/s/ D. David DeWald
D. David DeWald
  *Deputy Attorney General*
Wyoming Attorney General's
Office Water & Natural
Resources Division
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-7895 phone
(307) 777-3542 fax
david.dewald@wyo.gov

*Counsel for Petitioner*
*State of Wyoming*

**DEREK BROWN**
**Attorney General of Utah**

/s/ Stanford E. Purser
Stanford E. Purser
  *Solicitor General*
Office of the Utah Attorney General
160 E. 33 S., 5th Floor
Salt Lake City, Utah 84111
(385) 382-4334
spurser@agutah.gov

*Counsel for Petitioner*
*State of Utah*

KEN PAXTON
**Attorney General of Texas**

**BRENT WEBSTER**
**First Assistant Attorney General**

**JAMES LLOYD**
**Deputy Attorney General for Civil Litigation**

**KELLIE E. BILLINGS-RAY**
**Chief, Environmental Protection Division**

/s/ Clayton Smith
CLAYTON SMITH
Assistant Attorney General
D.C. Circuit Bar No. 65145
Texas Bar No. 24091234
clayton.smith@oag.texas.gov

Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, MC 066
Austin, Texas 78711-2548
Tel: (512) 971-0139
Fax: (512) 320-0911

*Counsel for Petitioners State of Texas and Texas Commission on Environmental Quality in Consolidated Case No. 24-1052*

## CERTIFICATE OF COMPLIANCE

I certify, under Fed. R. App. P. 32(g), that this Response complies with the type-volume limitation in Fed. R. App. P. 27(d)(2)(A) because it contains 3,224 words.

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word.

Dated: December 4, 2025

/s/ Jacob M. Abrahamson

**CERTIFICATE OF SERVICE**

I certify, under Fed. R. App. P. 25(c), that the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter, who are registered with the Court's CM/ECF system.

Dated: December 4, 2025

/s/ Jacob M. Abrahamson