UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

COMMONWEALTH OF KENTUCKY, et al.,
*Petitioners*,

*v.*

U.S. ENVIRONMENTAL PROTECTION AGENCY, LEE ZELDIN,
*Respondents.*

———————————

On Petition for Review of Final Agency Action
of the United States Environmental Protection Agency

———————————

**INDUSTRY AND ARIZONA COALITION PETITIONERS'
RESPONSE IN SUPPORT OF RESPONDENTS' MOTION FOR VACATUR**

———————————

Lucinda Minton Langworthy
Erica N. Peterson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
clangworthy@hunton.com
epeterson@hunton.com
(202) 955-1500

Elbert Lin
*Counsel of Record*
HUNTON ANDREWS KURTH LLP
951 East Byrd Street, East Tower
Richmond, VA 23219
elin@hunton.com
(804) 788-8200

*Counsel for Petitioners Chamber of Commerce of the United States of America,
American Chemistry Council, American Forest & Paper Association, American
Petroleum Institute, American Wood Council, National Association of
Manufacturers, National Mining Association, and Portland Cement Association*

*Additional counsel listed on following pages*

Andrew R. Varcoe
Stephanie A. Maloney
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
avarcoe@USChamber.com
smaloney@USChamber.com

*Counsel for Petitioner Chamber of
Commerce of the United States of
America*

Erica Klenicki
NAM Legal Center
733 Tenth Street, NW
Suite 700
Washington, DC 20001

*Counsel for Petitioner
National Association of
Manufacturers*

Michael G. Bailey
ARIZONA CHAMBER OF
COMMERCE
100 N. 7th Ave, Suite 120
Phoenix, AZ 85007
(602) 248-4430
mbailey@azchamber.com

*Counsel for Arizona Chamber of
Commerce and Industry*

Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107 / Fax 720-545-9952
trvanbockern@hollandhart.com

Emily C. Schilling
Sydney J. Sell
Holland & Hart LLP
101 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753 / Fax 202-747-6574
ecschilling@hollandhart.com
sjsell@hollandhart.com

*Counsel for Petitioner Essential
Minerals Association*

Brunn (Beau) W. Roysden III
FUSION LAW, PLLC
7600 N. 15th St., Suite 150
Phoenix, AZ 85020
beau@fusion.law
(602) 315-7545

*Counsel for President of the
Arizona State Senate Warren Petersen
and Speaker of the Arizona House of
Representatives Steve Montenegro*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ................................................................................................3

ARGUMENT .....................................................................................................6

   I.   The Reconsideration Rule is unlawful. ..........................................................6

      A.   EPA has not invoked any authority that allows it to reconsider a prior NAAQS decision without first completing a "thorough review" of the relevant air quality criteria. ...........................7

         1.   The second sentence of Section 109(d)(1) does not provide EPA the discretionary authority it purported to exercise. ...........7

         2.   The second sentence of Section 109(b)(1) cannot save the Rule. ...................................................................................8

      B.   In the alternative, EPA was arbitrary and capricious in promulgating the Reconsideration Rule. ...............................14

   II.   The Reconsideration Rule should be vacated. ...........................................15

CONCLUSION .................................................................................................17

CERTIFICATE OF COMPLIANCE ...............................................................20

CERTIFICATE OF SERVICE ........................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir. 1993)............................................................16

*Am. Great Lakes Ports Ass'n v. Schultz*,
   962 F.3d 510 (D.C. Cir. 2020)......................................................16, 17

*ANR Storage Co. v. FERC*,
   904 F.3d 1020 (D.C. Cir. 2018)...........................................................9

*Apogee Coal Co. v. Off. of Workers' Comp. Programs*,
   113 F.4th 751 (7th Cir. 2024) ...........................................................10

*Carducci v. Regan*,
   714 F.2d 171 (D.C. Cir. 1983)............................................................12

*Clark v. Sweeney*,
   No. 25-52, 2025 WL 3260170 (U.S. Nov. 24, 2025) (per curiam) ...................12

*Clean Air Council v. Pruitt*,
   862 F.3d 1 (D.C. Cir. 2017) (per curiam)........................................10

*Connecticut Department of Public Utility Control v. FERC*,
   484 F.3d 558 (D.C. Cir. 2007) (per curiam)........................................10

*Department of Homeland Security v. Regents of the University of Cal.*,
   591 U.S. 1 (2020)..............................................................................16

*FDA v. Wages & White Lion Invs., L.L.C.*,
   604 U.S. 542 (2025)......................................................................9, 11

*Greenlaw v. United States*,
   554 U.S. 237 (2008)..........................................................................12

*Estate of Insinga by Gilmore v. Comm'r of Internal Revenue*,
   149 F.4th 709 (D.C. Cir. 2025)...........................................................9

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 369 (2024)..........................................................................11

*Nat'l Ass'n of Regul. Util. Comm'rs v. Interstate Com. Comm'n,*
    41 F.3d 721 (D.C. Cir. 1994) ................................................................. 12

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943) ........................................................................ 9, 11

*SEC v. Chenery Corp.,*
    332 U.S. 194 (1947) ........................................................................... 16

*Sierra Club v. EPA,*
    705 F.3d 458 (D.C. Cir. 2013) ........................................................... 15

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
    985 F.3d 1032 (D.C. Cir. 2021) ......................................................... 15

*United States v. Sineneng-Smith,*
    590 U.S. 371 (2020) ..................................................................... 12, 13

*United Steel v. Mine Safety & Health Admin.,*
    925 F.3d 1279 (D.C. Cir. 2019) ......................................................... 15

**Statutes and Other Authorities**

42 U.S.C. § 7409(d)(1) ........................................................................ 3, 14

"Reconsideration of the National Ambient Air Quality Standards for
    Particulate Matter," 89 Fed. Reg. 16,202 (Mar. 6, 2024) ................. 1, 4

## INTRODUCTION

Even before its current motion, the U.S. Environmental Protection Agency (EPA or Agency) and Industry and Arizona Coalition Petitioners (Industry Petitioners) had come to agree on much in this appeal. Both agreed that Section 109(d)(1) of the Clean Air Act (or Act) requires EPA to periodically review and revise existing national ambient air quality standards (NAAQS) by first completing a "thorough review" of the air quality criteria on which the NAAQS is based, and then determining whether and how the NAAQS should be revised. Both further agreed that in the Reconsideration Rule at issue,[1] EPA had revised a NAAQS without undertaking the "thorough review." And finally, EPA and Petitioners agreed that EPA claimed the second sentence of Section 109(d)(1), standing alone, provided that novel workaround authority.

Now, EPA and Petitioners are aligned on even more. After further consideration following a change in administrations, EPA concedes that the Reconsideration Rule was unlawful and urges this Court to vacate it. The Court should do so.

---

[1] "Reconsideration of the National Ambient Air Quality Standards for Particulate Matter," 89 Fed. Reg. 16,202 (Mar. 6, 2024) (Reconsideration Rule or Rule).

First, EPA has not invoked any authority that could allow it to reconsider a prior NAAQS decision without first completing a "thorough review" of the relevant air quality criteria. As EPA now admits, its previous effort to decouple the second sentence of Section 109(d)(1) from the first—which includes the "thorough review" requirement—was simply wrong.

Nor is there any other statutory basis on which this Court can uphold the Rule. As EPA notes, this Court asked at oral argument whether the second sentence of Section 109(b)(1) might provide EPA a different way around the "thorough review" requirement. EPA's motion is correct in explaining that it does not. But there is a more fundamental problem with that argument: this Court is barred from reaching it by the *Chenery* doctrine and the party presentation principle. Neither in the decision under review, nor in briefing this appeal, did EPA ever invoke that sentence as a basis for evading the requirement of a "thorough review."

Second, and in the alternative, EPA was arbitrary and capricious in promulgating the final rule even if this Court were to determine that EPA had authority under the second sentence of Section 109(d)(1) to revise NAAQS whenever it chooses and without a "thorough review." Among other reasons, EPA refused to consider costs in determining whether even to exercise that supposed power, which EPA now correctly recognizes it would have been required to do. As Industry Petitioners argued—and EPA agrees in its motion—if EPA truly had

discretion to revise a NAAQS at its choosing outside a "thorough review", it was obligated to consider costs (and other relevant factors) under the principles of reasoned decision-making that apply to any exercise of agency discretion. Its failure to do so was arbitrary and capricious.

The Rule should be vacated.

## BACKGROUND

Section 109(d)(1) of the Clean Air Act sets forth requirements regarding EPA's review and revision of existing NAAQS and the air quality criteria on which the NAAQS are based. The two-sentence provision states:

> Not later than December 31, 1980, and *at five-year intervals* thereafter, the Administrator shall complete *a thorough review* of the criteria published under section 7408 of this title and the national ambient air quality standards promulgated under this section and shall make such revisions in such criteria and standards and promulgate such new standards as may be appropriate in accordance with section 7408 of this title and subsection (b) of this section. The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph.

42 U.S.C. § 7409(d)(1) (emphases added). Of particular relevance here, the first sentence mandates that EPA complete, "at five-year intervals," a "thorough review" of the existing criteria and NAAQS *before* turning to revisions or the promulgation of new standards.

EPA completed its most recent "thorough review" of the air quality and NAAQS for particulate matter (PM) in December 2020 and made no revisions to

any NAAQS, including the primary annual $PM_{2.5}$ standard at issue here. Opening Br. 7-8 (Doc. 2079902); EPA Mot. 6-7 (Doc. 2147050). That "thorough review" included creating an Integrated Science Assessment (the 2019 ISA) that examined the air quality science since the last review. Opening Br. 8; EPA Mot. 7.

But just a few months later, EPA announced it would "reconsider the previous administration's" 2020 decision. Opening Br. 9; EPA Mot. 7-8. The Agency prepared a supplement to the 2019 ISA (the ISA Supplement), 89 Fed. Reg. at 16,203, JA0164, and eventually published the final Reconsideration Rule in March 2024, Opening Br. 11; EPA Mot. 1, 9. The final Rule lowered the primary annual $PM_{2.5}$ standard from 12.0 $\mu g/m^3$ to 9.0 $\mu g/m^3$, while retaining all other PM NAAQS. 89 Fed. Reg. 16,202, JA0163.

In contrast to the 2020 decision, EPA admitted that the final Reconsideration Rule was not based on the statutorily required "thorough review." Rather, EPA explained that it only "partially reopen[ed]" the air quality criteria, *id.* at 16,213, JA0174, to include "certain studies [the Administrator] considered most useful," Response to Comments (RTC) at 122, JA2801. Accordingly, EPA "acknowledge[d] that the ISA Supplement does not itself satisfy the EPA's obligation to periodically complete a thorough review of the air quality criteria." RTC at 121, JA2800; *see also* EPA Mot. 8.

Nevertheless, EPA argued that the final Rule was consistent with Section 109(d)(1), based on a reading that decouples the provision's second sentence from its first. EPA admitted that "the first sentence of section 109(d)(1) imposes a duty" to "complete a 'thorough review.'" RTC at 121, JA2800. But in its view at the time, the second sentence "provides *additional* authority, *independent* of the requirement to undertake a full review." *Id.* (emphases added); *see also id*. at 122, JA2801 (asserting that the second sentence of Section 109(d)(1) "authorizes the Administrator to revise the air quality criteria, without undertaking a 'thorough review' of the criteria").

Petitioners challenged this novel action on several grounds. As an initial matter, Petitioners contended that EPA misinterpreted Section 109(d)(1) and, thus, lacked statutory authority to reconsider a prior NAAQS decision without undertaking a thorough review. Opening Br. 23-28; Reply Br. 4-14 (Doc. 2079909). In the alternative, Petitioners argued that even if EPA had such discretionary authority, its decision was arbitrary and capricious because, among other issues, EPA refused to consider costs. Opening Br. 28-32; Reply Br. 15-21; *see also* RTC at 129, JA2808 (refusing to consider any costs, even those from reliance on the 2020 decision).

In its response brief, EPA reaffirmed its claim to unprecedented authority under the second sentence of Section 109(d)(1), acknowledging that this Rule was

the first of its kind.  EPA Br. 79.  EPA admitted that it "did not purport to complete the 'thorough review' … contemplated in the *first sentence* of Section 7409(d)(1)," but claimed independent authority from "the *second sentence* of Section 7409(d)(1)" to "revise air quality standards *without reviewing air quality criteria at all*."  EPA Br. 31, 41, 42 (emphases added).  And EPA contended that, in exercising authority under that sentence, it was barred from considering costs.  *Id.* at 49-50.

Oral argument was held on December 16, 2024.  This Court asked whether authority for conducting a reconsideration without a thorough review might be found *elsewhere* in the Clean Air Act—namely, Section 109(b)(1)—but no party identified any place where EPA had made this argument.  And counsel arguing for Industry Petitioners explained that the Court was thus foreclosed from considering that argument by the *Chenery* doctrine and party presentation.   Tr. 9-12.

Following a change in administration in January 2025 and an abeyance period during which EPA re-evaluated the Reconsideration Rule, EPA filed the instant motion confessing error and urging this Court to vacate the Rule.

## ARGUMENT

### I.    The Reconsideration Rule is unlawful.

Industry Petitioners agree with all EPA's merits arguments in its motion, but think this Court need reach only the first to hold the Reconsideration Rule unlawful.  Petitioners concur with EPA's confession that it was previously misinterpreting the

second sentence of Section 109(d)(1) and thus lacked authority to promulgate the Rule.  And that confession should end this case.  Under the *Chenery* doctrine and the principle of party presentation, this Court should not (and cannot) reach EPA's responses to this Court's oral argument inquiry about whether Section 109(b)(1) might alternatively provide the requisite authority.  Nor, consequently, need this Court decide whether EPA also acted arbitrarily and capriciously.  If this Court does reach either of those arguments, however, it should adopt EPA's position on both.

**A.      EPA has not invoked any authority that allows it to reconsider a prior NAAQS decision without first completing a "thorough review" of the relevant air quality criteria.**

**1.      The second sentence of Section 109(d)(1) does not provide EPA the discretionary authority it purported to exercise.**

Prior to this motion, EPA repeatedly and consistently argued that its NAAQS revision without a "thorough review" was authorized by the second sentence of Section 109(d)(1).  In the record supporting the Reconsideration Rule, EPA quoted that sentence as capturing "precisely what the Administrator is doing here."  RTC at 121, JA2800.  Then again in its brief in this case, EPA pointed to "the second sentence of Section 7409(d)(1)" as "th[e] authority that EPA relied on to revise the PM$_{2.5}$ standard in the Final Rule."  EPA Br. 30; *see also id.* at 50 ("EPA here exercised the authority of the *second* sentence of Section 7409(d)(1)").  And EPA's brief specifically described the question before this Court as "whether EPA can revise criteria and standards 'earlier or more frequently' under Section 7409(d)(1)'s

second sentence without also conducting another 'thorough review' that Section 7409(d)(1)'s first sentence requires." *Id.* at 28; *see also id.* at 2 (first issue in Statement of the Issues).

As EPA now admits—and as Industry Petitioners have argued—the two sentences of Section 109(d)(1) cannot be decoupled in that way. The best reading of the second sentence is not as a separate grant of power. It is merely a modification to the timing requirements for the mandate in the first sentence. That follows from the plain text, the surrounding context, and the Act's structure. Opening Br. 25-28; Reply Br. 10-14; EPA Mot. 15-18. It also tracks how EPA consistently read the statute until this Rule. EPA Mot. 14.

### 2. The second sentence of Section 109(b)(1) cannot save the Rule.

For at least two reasons, the second sentence of Section 109(b)(1) cannot provide EPA the requisite authority for the Rule. First, the *Chenery* doctrine and the principle of party presentation both bar this Court from reaching that argument. Second, and in any event, Section 109(b)(1) "does not overcome section 109(d)(1)'s 'thorough review' requirement," as EPA explains in its motion. EPA Mot. 16.

### a. This Court is doubly barred from considering Section 109(b)(1) as a stand-alone basis for EPA's purported reconsideration authority.

The "now-bedrock" *Chenery* doctrine states that "an agency action cannot stand 'unless the grounds upon which the agency acted in exercising its powers were

those upon which its action can be sustained.'" *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 587 (2025) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (*Chenery I*)). It is a "simple but fundamental rule of administrative law that reviewing courts must judge the propriety of agency action solely by the grounds invoked by the agency." *Estate of Insinga by Gilmore v. Comm'r of Internal Revenue*, 149 F.4th 709, 718-19 (D.C. Cir. 2025) (internal quotation marks and citation omitted). The doctrine bars agency counsel from raising "an alternative ground … for the first time in litigation," *Wages & White Lion*, 604 U.S. at 587, and likewise forbids courts from "supply[ing] [their] own reasoning for the agency decision," *ANR Storage Co. v. FERC*, 904 F.3d 1020, 1024 (D.C. Cir. 2018).

The *Chenery* doctrine prohibits this Court from looking to Section 109(b)(1) as a basis for avoiding the "thorough review" requirement because EPA did not "invoke[]" this "ground[]" in the record below. As discussed, EPA said in its Response to Comments that it is the second sentence of Section 109(d)(1) that authorizes "precisely what the Administrator is doing here." RTC at 121, JA2800. EPA mentioned Section 109(b)(1) only to describe the substantive standards for setting NAAQS, *id.* at 90, JA2769, as a basis for rejecting the consideration of costs, *id.* at 109, 112-13, 118, 120, JA2788, JA2791-JA2792, JA2797, JA2799, and as possibly requiring notice and comment, *id.* at 120 n.19, JA2799. EPA never once argued in the record below that Section 109(b)(1) provides an alternative basis for

bypassing the "thorough review" requirement of Section 109(d)(1). In its motion, EPA confirms that it has never made that argument *anywhere*, much less in support of this Rule. EPA Mot. 2.

These circumstances mirror those in *Connecticut Department of Public Utility Control v. FERC*, 484 F.3d 558 (D.C. Cir. 2007) (per curiam). There, the agency argued in "its brief and at oral argument" that "FPA section 201 permits the Commission to regulate," even though the agency "conceded at oral argument [that] this new basis for statutory authority appears nowhere in either of its orders." *Id.* at 560. Citing the *Chenery* doctrine, this Court held that it could not consider this "post hoc" rationalization by the agency's appellate counsel. *Id.* Similarly here, this Court may not, on its own volition, supply for EPA a "new basis for statutory authority" that appears nowhere in the record below. *See also Apogee Coal Co. v. Off. of Workers' Comp. Programs*, 113 F.4th 751, 762 (7th Cir. 2024) ("The *Chenery* doctrine, to say nothing of the party presentation principle, affirmatively prohibits us from scouring the Act and regulations for bases for liability that have to date gone unidentified by the Department."); *Clean Air Council v. Pruitt*, 862 F.3d 1, 9 (D.C. Cir. 2017) (per curiam) (refusing under the *Chenery* doctrine to consider whether EPA action could be upheld under "inherent authority" because EPA "did not rely on it[]").

At oral argument, this Court suggested that *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), might diminish the force of the *Chenery* doctrine. It does not. *Loper Bright* holds that a court must exercise its independent judgment in evaluating a question of statutory authority pursuant to the Administrative Procedure Act. *Id*. at 394. That does not mean that courts may (much less must) reach out and uphold an agency decision by invoking a ground of statutory authority not invoked by the agency itself in the decision under review.

Were there any doubt about that, it was dispelled by the Supreme Court in *Wages & White Lion*. There, less than a year after *Loper Bright*, the Court reaffirmed *Chenery*'s core reasoning that "when Congress vests an agency with authority to make 'a determination of policy or judgment' and the agency fails to exercise that authority, 'a judicial judgment cannot be made to do service for an administrative judgment.'" 604 U.S. at 587 (quoting *Chenery I*, 318 U.S. at 88). The Court also stressed that it has never held an agency's "application of an erroneous understanding of the governing law" exempt from the *Chenery* doctrine on harmless-error grounds—*even* where there is a "subsequent agency decision [that] shows that the agency would have reached the same result if it had applied the correct understanding of the law." *Id.* at 591. Of course, no such agency decision exists here. To the contrary, EPA's motion makes clear "there is no serious possibility that EPA would adopt the same approach … even if it could do so." EPA Mot. 22.

But even if the *Chenery* doctrine did not bar this Court from looking to Section 109(b)(1) as a newfound basis for avoiding the "thorough review" requirement, the party presentation principle does. Under "the principle of party presentation, … 'we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). "[C]ourts do not sit as self-directed boards of legal inquiry and research." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983). Or as the Supreme Court recently put it, "courts 'call balls and strikes'; they don't get a turn at bat." *Clark v. Sweeney*, No. 25-52, 2025 WL 3260170, at *1 (U.S. Nov. 24, 2025) (per curiam).

EPA did *not* argue in its brief that Section 109(b)(1) provides an alternative basis for avoiding the "thorough review" requirement. That is plain from the brief, *see supra* pp. 5-6, and reconfirmed in EPA's motion, *see* EPA Mot. 2.[2] To the extent EPA addressed the relevant language in Section 109(b)(1)—*i.e.*, "primary standards may be revised in the same manner as promulgated"—EPA said only that it mandates notice-and-comment rulemaking. EPA Br. 36.

---

[2] There is also no such argument in either Intervenor brief. And even if there were, "[i]ntervenors may only argue issues that have been raised by the principal parties." *Nat'l Ass'n of Regul. Util. Comm'rs v. Interstate Com. Comm'n*, 41 F.3d 721, 729 (D.C. Cir. 1994).

There is one statement at oral argument by Agency counsel suggesting that the Court "could go to (b)(1)." Tr. 64. But as the Supreme Court made clear in *Sineneng-Smith*, the party presentation principle is not satisfied merely because counsel "rode with an argument suggested by the panel." 590 U.S. at 379.

In sum, the *Chenery* doctrine and the principle of party presentation each independently bar this Court from reaching the question whether Section 109(b)(1) provides EPA a different way around the "thorough review" requirement. Thus, if this Court agrees that EPA misinterpreted Section 109(d)(1), it need not, and should not, go any further to conclude that the Reconsideration Rule is unlawful.

### b. In any event, Section 109(b)(1) does not overcome the "thorough review" requirement.

If this Court nevertheless considers the merits of Section 109(b)(1), EPA is correct that the provision does not grant it the authority to reconsider a NAAQS decision without first completing a "thorough review." As EPA explains, Section 109(d)(1) "specifie[s] a single path—and the only path—by which EPA may revise a standard," and that includes completing a "thorough review" of the air quality criteria. EPA Mot. 11. In contrast, the two sentences of Section 109(b)(1) first "describe[] the requirements for *setting* a primary NAAQS" and then, in referring to revision of NAAQS in "'the same manner as promulgated,'" requires any revision to follow "the procedure of promulgation (e.g., notice and comment rulemaking)." *Id.* at 15-16. If this issue is reached—despite both *Chenery* and party presentation—

the Court should conclude that Section 109(b)(1) provides no authority for EPA's unprecedented bypass theory.

**B. In the alternative, EPA was arbitrary and capricious in promulgating the Reconsideration Rule.**

Should this Court alternatively determine that EPA correctly invoked the second sentence of Section 109(d)(1) as authority to revise NAAQS outside a "thorough review," the Court should hold the Rule unlawfully arbitrary and capricious for the reasons previously argued in Petitioners' briefs.[3]

To start, EPA erred in refusing to consider "the costs associated with its discretionary mid-cycle review." *Id*. at 18. As Industry Petitioners argued, and EPA now agrees, nothing in the second sentence of Section 109(d)(1) guides EPA in making the threshold discretionary decision of *whether* to revise a NAAQS outside a "thorough review." All that sentence says is: "The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph." 42 U.S.C. § 7409(d)(1). Accordingly, in deciding whether even to exercise that authority, EPA was required under the reasoned decision-

---

[3] Of course, Petitioners' briefs did not connect these arbitrary-and-capricious arguments to the second sentence of Section 109(b)(1) as a claimed basis for EPA's purported reconsideration authority; Petitioners had no reason to do so because, as discussed, EPA never invoked that sentence for such a purpose in the decision under review or in its brief in this Court. But if the Court were to rely on Section 109(b)(1) for that purpose, these arguments would apply with equal force.

making principles applicable to any exercise of agency discretion to consider all relevant factors, which include costs.  Opening Br. 28-32; Reply Br. 15-21; EPA Mot. 18-21.  EPA's admitted refusal to consider costs was thus arbitrary and capricious.

In addition, the Rule was arbitrary and capricious for the other similarly substantive reasons set forth in Petitioners' briefs.  Opening Br. 42-44; Reply Br. 24-25; State Petitioners Opening Br. 29-44; State Petitioners Reply Br. 2-18.

## II.    The Reconsideration Rule should be vacated.

Regardless of the particular substantive error on which this Court finds the Rule unlawful, it should follow the "'ordinary practice'" of "'vacat[ing] unlawful agency action.'"  *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1050 (D.C. Cir. 2021) (citation omitted).  That is what this Court did in similar circumstances in *Sierra Club v. EPA*, 705 F.3d 458 (D.C. Cir. 2013).  There, "[b]ecause [the error] [wa]s a substantive defect, and because the EPA explicitly requested we vacate and remand," the Court "grant[ed] [EPA's] request."  *Id.* at 465.

Furthermore, the factors that justify the extraordinary remedy of remand without vacatur are not present.  Those factors are: "'(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur.'"  *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (citation

omitted).  For the first, the Court mainly analyzes whether "there is at least a serious possibility that the [agency] will be able to substantiate its decision on remand." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 151 (D.C. Cir. 1993).  And for the second, the "quintessential disruptive consequence arises when an agency cannot easily unravel" its unlawful action. *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020).  For the reasons explained in EPA's motion, which Industry Petitioners endorse, both factors favor vacatur.  EPA Mot. 22-23.

With respect to the first factor, Industry Petitioners add to EPA's reasons that the *Chenery* doctrine makes it impossible for EPA to turn to Section 109(b)(1) on remand, even if the agency wanted to do so.  In *Department of Homeland Security v. Regents of the University of California*, the Supreme Court held that if an agency desires on remand to provide "new" reasons for its action, it must "'deal with the problem afresh' by taking *new* agency action."  591 U.S. 1, 21 (2020) (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 201 (1947) (*Chenery II*)).  If the agency does not do so, it is limited merely to "elaborat[ing]" on its "prior reasons," *id.*, as any new reasons offered in that posture would constitute impermissible "*post hoc* justifications" under the *Chenery* doctrine, *id.* at 23.  Accordingly, the reasons why *Chenery* bars this Court from reaching Section 109(b)(1) also support vacatur of the

Rule: there is no possibility—much less a "serious" one—that EPA could rely on that provision if this Court were to remand *without* vacatur.

As to the second factor, Industry Petitioners underscore EPA's argument that vacating the Rule now would be less disruptive than remanding without vacatur. EPA Mot. 21-23. As EPA explains, the most significant implementation steps have yet to occur, with the next milestone two months away. So there is little to "unravel," *Am. Great Lakes Ports Ass'n*, 962 F.3d at 519; vacatur would essentially maintain the status quo. In contrast, remand without vacatur would impose substantial additional burdens on regulated parties and EPA—in furtherance of a rule that this Court has found unlawful and which, in all events, will be subject to "thorough review" in the next five-year cycle required by the Clean Air Act.

## CONCLUSION

For the foregoing reasons, the Court should grant EPA's motion for vacatur.

Dated: December 4, 2025

Respectfully submitted,

/s/ Elbert Lin
Elbert Lin
  *Counsel of Record*
HUNTON ANDREWS KURTH LLP
951 East Byrd Street, East Tower
Richmond, VA 23219
elin@hunton.com
(804) 788-8200

Andrew R. Varcoe
Stephanie A. Maloney
U.S. Chamber Litigation Center
1615 H Street, NW
Washington, DC 20062
(202) 463-5337
avarcoe@USChamber.com
smaloney@USChamber.com

*Counsel for Petitioner Chamber of Commerce of the United States of America*

Lucinda Minton Langworthy
Erica N. Peterson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
(202) 955-1500
clangworthy@hunton.com
epeterson@hunton.com

Erica Klenicki
NAM Legal Center
733 Tenth Street, NW
Suite 700
Washington, DC 20001

*Counsel for Petitioner National Association of Manufacturers*

*Counsel for Petitioners Chamber of Commerce of the United States of America, American Chemistry Council, American Forest & Paper Association, American Petroleum Institute, American Wood Council, National Association of Manufacturers, National Mining Association, and Portland Cement Association*

/s/ Michael G. Bailey
Michael G. Bailey
ARIZONA CHAMBER OF
COMMERCE
100 N. 7th Ave, Suite 120
Phoenix, Arizona 85007
(602) 248-4430
mbailey@azchamber.com

*Counsel for Arizona Chamber of*
*Commerce and Industry*

/s/ Brunn (Beau) W. Roysden III
Brunn (Beau) W. Roysden III
FUSION LAW, PLLC
7600 N. 15th St., Suite 150
Phoenix, Arizona 85020
beau@fusion.law
(602) 315-7545

*Counsel for President of the*
*Arizona State Senate Warren Petersen*
*and Speaker of the Arizona House of*
*Representatives Steve Montenegro*

/s/ Kristina (Tina) R. Van Bockern
Kristina (Tina) R. Van Bockern
Holland & Hart LLP
555 Seventeenth Street, Suite 3200
Denver, CO 80202
Ph. 303-295-8107 / Fax 720-545-9952
trvanbockern@hollandhart.com

Emily C. Schilling
Sydney J. Sell
Holland & Hart LLP
101 South Main Street, Suite 2200
Salt Lake City, UT 84101
Ph. 801-799-5753 / Fax 202-747-6574
ecschilling@hollandhart.com
sjsell@hollandhart.com

*Counsel for Petitioner Essential*
*Minerals Association*

## <u>CERTIFICATE OF COMPLIANCE</u>

As required by Fed. R. App. P. 32(g), I certify that this Response to Respondents' Motion For Vacatur complies with the type-volume limitation in Fed. R. App. P. 27(d)(2)(A) because it contains 3,982 words excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Times New Roman font using Microsoft Word.

/s/ Elbert Lin

## CERTIFICATE OF SERVICE

I certify that on December 4, 2025, I electronically filed the foregoing Response In Support Of Respondents' Motion For Vacatur with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Elbert Lin