No. 24-1050

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

COMMONWEALTH OF KENTUCKY, ET AL.

Petitioners,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.

Respondents.

On Petition for Review of Final Action by
the United States Environmental Protection Agency

**STATE AND LOCAL GOVERNMENT INTERVENORS'
OPPOSITION TO EPA'S MOTION FOR VACATUR**

ROB BONTA
Attorney General of California
ANNADEL A. ALMENDRAS
DEBORAH M. SMITH
Senior Assistant Attorneys General
MYUNG J. PARK
CHRISTIE VOSBURG
Supervising Deputy Attorneys General

STACY LAU
COREY M. MOFFAT
JONATHAN A. WIENER
Deputy Attorney General
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
(415) 510-3549
jonathan.wiener@doj.ca.gov

*Attorneys for Respondent-Intervenor State of California*

*Additional counsel listed on signature pages*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................ 1

BACKGROUND ........................................................................ 3

ARGUMENT ............................................................................ 4

I.    EPA's Motion Is Procedurally Improper ................................. 4

II.   EPA's Motion Fails to Justify Vacatur .................................. 10

    A.    The Clean Air Act Bars Vacatur for the Procedural Errors EPA and Petitioners Assert ............................... 10

        1.    EPA and Petitioners' Arguments for Vacatur Rely on Claimed Errors that Are Procedural Only .................................................... 11

        2.    EPA Has Not Shown that Additional Process or Explanation Would Likely Have Changed the Result .......................................... 13

    B.    Even If the Errors EPA Asserts Were Substantive, Vacatur Would Be Unwarranted ................................. 16

        1.    EPA's Purported Errors Could Easily Be Justified on Remand ......................................... 16

        2.    Remand Without Vacatur Respects State Planning Efforts and Protects Health and the Environment ...................................... 19

CONCLUSION .......................................................................... 21

# TABLE OF AUTHORITIES

**Page**

<small>CASES</small>

\* *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*
  988 F.2d 146 (D.C. Cir. 1993)............................................................ 2, 16, 17

*Am. Petroleum Inst. v. Costle*
  665 F.2d 1176 (D.C. Cir. 1981).................................................................. 12

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*
  972 F.3d 83 (D.C. Cir. 2020).......................................................................... 11

*Chlorine Chemistry Council v. EPA*
  206 F.3d 1286 (D.C. Cir. 2000)...................................................................... 6

\* *City of Port Isabel v. FERC*
  130 F.4th 1034 (D.C. Cir. 2025).................................................... 16, 18, 19

*Coal. for Responsible Regulation, Inc. v. EPA*
  684 F.3d 102 (D.C. Cir. 2012)...................................................................... 12

*Fertilizer Inst. v. EPA*
  935 F.2d 1303 (D.C. Cir. 1991).................................................................. 13

\* *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*
  920 F.3d 1 (D.C. Cir. 2019).................................................................... 9, 10

*Ky. Mun. Energy Agency v. FERC*
  45 F.4th 162 (D.C. Cir. 2022)...................................................................... 11

*Limnia, Inc. v. Dept' of Energy*
  857 F.3d 379 (D.C. Cir. 2017).................................................................... 17

\* *Authorities on which we chiefly rely are marked with an asterisk.*

*Lutheran Church-Missouri Synod v. F.C.C.*
141 F.3d 344 (D.C. Cir. 1998) ................................................... 17

\* *Mexichem Specialty Resins v. EPA*
787 F.3d 544 (D.C. Cir. 2015) ................................................... 6

*Michigan v. EPA*
136 S.Ct. 2463 (2016) ................................................................ 19

*Michigan v. EPA*
576 U.S. 743 (2015) ................................................................... 19

*Miss. River Transmission Corp. v. FERC*
969 F.2d 1215 (D.C. Cir. 1992) ................................................. 5

*Nat. Res. Def. Council v. EPA*
489 F.3d 1364 (D.C. Cir. 2007) ................................................. 5

*Ne. Maryland Waste Disposal Auth. v. EPA*
358 F.3d 936 (D.C. Cir. 2004) ................................................. 12

*North Carolina v. EPA*
550 F.3d 1176 (D.C. Cir. 2008) ............................................... 20

*Ohio v. EPA*
603 U.S. 279 (2024) (Barrett, J., dissenting) ............................. 11

*Prohibition Juice Co. v. U.S. Food & Drug Admin.*
45 F.4th 8 (D.C. Cir. 2022) ...................................................... 16

*SEC v. Chenery Corp.*
318 U.S. 80 (1943) ................................................................... 18

*Sierra Club v. Costle*
657 F.2d 298 (D.C. Cir. 1981) ................................................. 11

*Sierra Club v. EPA*
    705 F.3d 458 (D.C. Cir. 2013) ................................................................ 13

*U.S. Sugar Corp. v. EPA*
    830 F.3d 579 (D.C. Cir. 2016) ........................................................ 17, 20

*United Steel v. Mine Safety & Health Admin.*
    925 F.3d 1279 (D.C. Cir. 2019) .............................................................. 16

*Util. Solid Waste Activities Grp. v. EPA*
    901 F.3d 414 (D.C. Cir. 2018) .............................................................. 17

**STATUTES**

16 U.S.C. § 825*l*(b) ....................................................................................... 11
28 U.S.C. § 2342(3)(A) ................................................................................ 11
* 42 U.S.C. §7409 ........................................................................................ 15
* 42 U.S.C. §7409(d) ........................................................ 2, 11, 12, 15, 17, 18
42 U.S.C. §7607(d) ...................................................................................... 16
42 U.S.C. §7607(d)(7) .................................................................................. 15
* 42 U.S.C. §7607(d)(7)(B) .......................................................................... 15
* 42 U.S.C. §7607(d)(8) .......................................................................... 11, 12

**FEDERAL REGISTER NOTICES**

81 Fed. Reg. 24,420 (Apr. 25, 2016) ............................................................ 19

89 Fed. Reg. 16,202 (Mar. 6, 2024) .............................................................. 15

**OTHER AUTHORITIES**

D.C. Circuit Rule 27(f)(1) ............................................................................... 5

https://ww2.arb.ca.gov/our-work/programs/california-state-
    implementation-plans/statewide-efforts/sips-9-mgm3-pm2-5 .................... 21

**INTRODUCTION**

This case was argued exactly one year ago today. For most of the time since, Respondents United States Environmental Protection Agency and Administrator Lee Zeldin (collectively, EPA) have told this Court to hold off on issuing a decision because EPA was taking steps toward a rulemaking to change the rule being challenged. In February, EPA told this Court that the agency needed time to review that rule, EPA's 2024 National Ambient Air Quality Standards ("NAAQS") for fine particulate matter ("the 2024 Rule"), and to determine appropriate administrative steps. In April, EPA informed the Court it had decided to undertake a notice-and-comment rulemaking that would potentially obviate the need for judicial resolution. And in August, the agency told the Court that it expected to release a proposed rule in the fall of 2025.

EPA now appears to have changed course. Without even mentioning the status of the expected rulemaking, let alone explaining what—if anything—has changed from EPA's prior representations, EPA asks this Court to dismantle the 2024 Rule for it. But rather than tell this Court to lift the abeyance and decide the entire briefed-and-argued case in the ordinary course, EPA seeks vacatur via a last-minute motion that directly conflicts with positions EPA previously took in both the underlying rulemaking and this litigation.

The Court should deny EPA's motion. As an initial matter, EPA's motion comes so late that it will do nothing to conserve party resources and may do little to conserve judicial resources. And it fails to inform the Court of whether and how circumstances have changed from when EPA asked the Court to place this case into abeyance to allow EPA to propose altering the 2024 Rule through administrative processes.

On the merits, EPA's motion fails to show any infirmity in the 2024 Rule that would justify vacatur. EPA argues the 2024 Rule should be vacated because Section 109(d) of the Clean Air Act, 42 U.S.C. § 7409(d), requires EPA to undertake additional processes—namely, a "thorough review" of all potential effects of fine particulate matter—before it can update the NAAQS, and because EPA did not fully explain its authority to conduct a targeted review instead. EPA's new theory is wrong, as explained in the respective merits briefs of EPA and the undersigned State and Local Government Intervenors ("State Intervenors"). EPA Br. 35-45, ECF#2079971; State Intv. Br. 4-11, ECF#2079978. And as we explain below, even accepting the agency's new position on the merits would still not justify vacatur. At most, it might justify remand without vacatur under both the Clean Air Act's procedural-error provision and this Court's test from *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146 (D.C. Cir. 1993).

The motion should be denied.

## BACKGROUND

This case has been extensively briefed and argued, and, as of the time of this filing, was submitted exactly one year ago. Ctrm. Min. of Oral Arg., ECF#2089708; Oral Arg. Tr. 91, ECF#2147050. Rather than recount the factual and legal background already covered in those prior proceedings, State Intervenors briefly recap events of the last year.

EPA first asked this Court for abeyance on February 18, 2025, explaining that the new Administration needed time to familiarize itself with the 2024 Rule and "decide what action, if any, is necessary." Mot. to Hold Case in Abeyance at 3, ECF#2101162. EPA stated that abeyance would allow it to "take further action that may obviate the need for judicial resolution." *Id*. at 5. The Court granted the requested abeyance. Order, (February 25, 2025) ECF#2102525.

Over the ensuing months, EPA obtained multiple extensions of that abeyance. EPA justified its first extension request by telling the Court the agency "has decided that it will initiate a new notice-and-comment process revisiting the challenged rule." EPA's Corrected Mot. To Hold Case in Abeyance for an Add'l 30 Days at 4 (April 28, 2025), ECF#2113396. The Court granted this request over the opposition of Respondent-Intervenors. Order (May 28, 2025), ECF#2117307.

In granting EPA's request for a second extension, the Court directed the agency to provide "information about the progress of their reconsideration and a

timetable for their decision." Order (July 14, 2025), ECF#2125181. EPA's third

request for an extension told the Court the agency "expects to sign a proposed rule

in the Fall of 2025 after review by the Office of Management and Budget" and "is

targeting signature of any final rule by February of 2026." EPA's Mot. to Extend

Abeyance for an Add'l 45 Days at 2 (Aug. 13, 2025), ECF#2130019. That request

included a sworn statement from the same official EPA relies on in this motion that

the proposed rule was already being drafted and reviewed. Decl. of Aaron Szabo

¶ 9 (Aug. 13, 2025), ECF#2130019.

As of the date of this filing, no proposed rule has been released. Instead, EPA

filed the pending motion, which requests that this Court vacate the 2024 Rule. The

motion contains no explanation of when or why EPA changed plans from what it

had previously told this Court. Indeed, the motion does not clarify whether EPA

remains engaged in the rulemaking discussed in its prior filings. And neither

EPA's website, the Office of Management and Budget's website, nor any other

publicly available evidence provides any indication whether EPA is moving

forward with a rulemaking or has abandoned that effort.

## ARGUMENT

### I.  EPA'S MOTION IS PROCEDURALLY IMPROPER

The Court should deny EPA's motion for the simple reason that this case has

been fully briefed and argued for a year, and nothing has happened since that could

affect this Court's analysis. Circuit rules generally bar dispositive motions at this late hour. D.C. Circuit Rule 27(f)(1) (45-day deadline for "[a]ny motion which, if granted, would dispose of the appeal or petition for review in its entirety"). That rule recognizes that once a case is briefed and argued, dispositive motion practice is more likely to waste judicial and party resources than conserve them. *Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215, 1217 n.2 (D.C. Cir. 1992) (discussing predecessor rule). EPA's "filing ignored this rule and the policy behind it" and should be denied "[f]or that reason alone." *See id*.

State Intervenors know of no case—and EPA and Petitioners cite none—in which this Court has granted an agency motion to vacate, opposed or otherwise, at this stage of proceedings. On the rare occasions this Court has granted an agency's motion to vacate its own rule, the motions were unopposed and filed earlier in the process, often in response to directly on-point legal developments. *See California v. EPA*, No. 21-1035 (D.C. Cir. Apr. 5, 2021) (unopposed motion filed soon after docketing); *Nat. Res. Def. Council v. EPA*, D.C. Cir. No. 09-1256 (Sept. 19, 2012) (unopposed motion filed prior to issuance of briefing schedule); *Env't Def. Fund v. EPA*, No. 19-1222 (D.C. Cir. Apr. 5, 2021) (unopposed motion filed after intervening judicial decision post-briefing but pre-argument); *see also Nat. Res. Def. Council v. EPA*, 489 F.3d 1364, 1371 (D.C. Cir. 2007) (same, for motion for partial vacatur).

By contrast, EPA's contested motion here comes a year after the case was argued. It follows the agency's repeated requests that the Court *not* issue a decision, on the premise that EPA was pursuing administrative action that could obviate the need for such a decision. But the motion does not disavow the stated plans for administrative action, nor cite any intervening legal development. The Court should therefore deny it.

If the Court is inclined to consider EPA's arguments on the merits, it should evaluate (and reject) them in the ordinary course of litigation, on the copious briefing submitted by the parties, rather than via belated motions practice. *Cf. Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1290 (D.C. Cir. 2000) (resolving case on the merits rather than via motion to vacate). Vacatur in the absence of a merits decision is heavily disfavored. *Mexichem Specialty Resins v. EPA*, 787 F.3d 544, 557 (D.C. Cir. 2015) ("EPA's consent is not alone a sufficient basis for us to stay or vacate a rule."). Judicial resolution on the merits helps prevent agencies from trying to "circumvent the rulemaking process through litigation concessions, thereby denying interested parties the opportunity to oppose or otherwise comment on significant changes in regulatory policy." *Id*. That caution applies with particular force here, given that the motion studiously avoids any mention of EPA's previously planned rulemaking.

That omission independently warrants denial of EPA's motion, because the status of the agency's rulemaking plans may affect what steps the Court decides to take next. Specifically, EPA's plans may bear on whether the Court should either: (1) deny the motion and continue to hold this case in abeyance for EPA to undertake whatever rulemaking it might be planning; or (2) deny the motion, lift the abeyance and resolve the entire case. Indeed, after each of the last four Presidential transitions, EPA's representations about its rulemaking plans have guided this Court's decisions about how to proceed in NAAQS cases.

For example, the Court initially held litigation over EPA's 2008 ozone NAAQS in abeyance based on EPA's representations that it planned to undertake a reconsideration of that rule. *See* EPA's Notice that It Is Reconsidering the Rule Challenged in these Cases, *Mississippi v. EPA*, No. 08-1200 (D.C. Cir. Sept. 16, 2009), ECF#1206476. When EPA ultimately decided not to finalize that reconsideration, it informed the Court, and the Court proceeded to decide the case on the merits. EPA's Revised Mot. to Govern Further Proceedings, *Mississippi* (D.C. Cir. Sept. 12, 2011) ECF#1329010; *see also Mississippi*, 744 F.3d 1334, 1341-42 (D.C. Cir. 2013) (recounting history).

Similarly, in 2018, EPA requested the Court continue holding in abeyance litigation over the 2015 ozone NAAQS pending "a final decision on [EPA's] expected administrative path forward, which in turn will provide a more solid

foundation to decide the appropriate litigation path forward here." EPA's Resp. to Mot. to Lift Abeyance, *Murray Energy Corp. v. EPA* at 4, No. 15-1385 (D.C. Cir. June 8, 2018), ECF#173521. When the date of EPA's promised decision arrived, EPA told the Court that it had decided against a targeted reconsideration of the rule, and thus did not oppose lifting the abeyance. Resp't EPA's Final Status Report, *Murray Energy* (D.C. Cir. Aug. 1, 2018), ECF#1743501. For both the 2008 and 2015 rules, then, the Court proceeded to lift the abeyance, hold argument, and resolve the case on the merits.

The Court chose a different path for two 2020 NAAQS rules, again relying on EPA's representations about its plans. EPA's requests for abeyance of litigation over its 2020 decision not to strengthen the NAAQS for particulate matter repeatedly laid out the agency's schedule for the reconsideration that ultimately resulted in the 2024 Rule challenged here, and the Court responded by granting those requests. *See, e.g.,* Mot. to Hold in Abeyance, *State of California v. EPA*, No. 21-1014 (D.C. Cir. Aug. 16, 2021) ECF#1910291; Order, *State of California,* No. 21-1014 (D.C. Cir. Oct. 1, 2021) ECF#1916444.

EPA similarly asked for an abeyance of the litigation over its 2020 rule retaining the 2015 ozone NAAQS so it could conduct a targeted reconsideration like the one it undertook here. *See, e.g.,* Mot. to Hold in Abeyance, *State of New York v. EPA*, No. 21-1018 (D.C. Cir. Oct. 29, 2021), ECF#1920265. And when

EPA decided not to pursue that course, it told the Court and successfully requested a remand without vacatur of the challenged rule after laying out exactly what steps it intended to take in its next thorough review. Unopposed Mot. for Voluntary Remand Without Vacatur, *State of New York*, No. 21-1018 (D.C. Cir. Jan. 3, 2024), ECF#2034337; Order, *State of New York* (D.C. Cir. Feb. 2, 2024), ECF#2038660.

In contrast to its filings in those cases as well as earlier in this case, EPA's motion at issue lacks any detail about EPA's current plans, and should be denied for that reason alone. If EPA is still planning on the rulemaking it pointed to as a reason to hold this case in abeyance, it should say so. The Court could then decide whether to continue to wait for EPA to articulate its new position in that rulemaking. But if EPA has abandoned its planned reconsideration, it should say *that* instead, just as it did when it dropped prior plans to reconsider other NAAQS. And just like in those cases, the Court could then proceed to lift the abeyance and resolve the entire case.

But EPA cannot have it both ways. If it wants to "attempt to secure rescission of a policy it no longer favors," it should follow through with a regulatory action where it can explain its reasons and test them against public comment. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 23 (D.C. Cir. 2019). If it instead wants to "avoid the political accountability that would attend its

own policy reversal by effectively inviting the courts to set aside the rule instead,"
*id.*, it should do so explicitly by asking this Court to lift the abeyance and resolve the case on its merits.

## II. EPA'S MOTION FAILS TO JUSTIFY VACATUR

If the Court does entertain EPA's motion, it should deny the agency's request on the merits and on the remedy. Abandoning its prior positions in the underlying rulemaking and this litigation, EPA now argues that it could not have fixed the flaws in its 2020 decision to retain the prior NAAQS without restarting from scratch the process of reviewing both air quality criteria and standards. The agency argues alternatively that it erred by failing to consider the implementation costs that would result from conducting a targeted review.

EPA is wrong now, and was right before, for reasons State Intervenors have already explained and for those elaborated in the Health, Environmental, and Community Group Respondent-Intervenors' opposition to EPA's motion ("NGO Opp."), with which State Intervenors agree. And, as discussed below, even if EPA's motion had identified an error in the process that led to the 2024 Rule, it did not identify one that warrants vacatur.

### A. The Clean Air Act Bars Vacatur for the Procedural Errors EPA and Petitioners Assert

The Clean Air Act sets a high bar for vacatur based on procedural errors. A reviewing court may only invalidate a rule based on a procedural error if the error

is "so serious and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if such errors had not been made." 42 U.S.C. § 7607(d)(8). "The essential message of so rigorous a standard is that Congress was concerned that EPA's rulemaking not be casually overturned for procedural reasons." *Sierra Club v. Costle*, 657 F.2d 298, 391 (D.C. Cir. 1981). The provision is "tailor-made to undo any rigid presumption of vacatur that might apply in other contexts." *Ohio v. EPA*, 603 U.S. 279, 318-19 (2024) (Barrett, J., dissenting) (quotation marks omitted).[1] The provision bars EPA's requested vacatur, because EPA asserts procedural errors that do not meet Section 307(d)(8)'s standard.

### 1. EPA and Petitioners' Arguments for Vacatur Rely on Claimed Errors that Are Procedural Only

EPA's newfound claim of error is that, when reconsidering its prior NAAQS, the agency did not follow the "process" set forth in Section 109(d). EPA Mot. for Vacatur ("Mot.") 1, 2, 3, 7, n.1. That is, EPA did not conduct a "thorough review" all the effects of particulate matter. EPA's motion faults the agency for taking a "shortcut" and not following the required "stepwise process" in its reconsideration.

---

[1] State Petitioners' claim that "vacatur is 'the standard course of action,'" Kentucky Resp. 3, relies on cases that did not arise under the Clean Air Act or under statutes with analogous procedural-error provisions. *Ky. Mun. Energy Agency v. FERC*, 45 F.4th 162, 179 (D.C. Cir. 2022) (applying 16 U.S.C. § 825*l*(b); *see also Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 117 (D.C. Cir. 2020) (applying 28 U.S.C. § 2342(3)(A)).

Mot. 1; *see also* Mot. 10 (embracing Industry Petitioners' merits brief (at 24-28) framing of Section 109(d) as "set[ting] forth a specific process" for EPA to complete). State Petitioners, too, assert that EPA engaged in a "short-circuited reconsideration process" and "skipped" an allegedly required step in the NAAQS reconsideration process. State Pet'rs' Resp. in Supp. Of Mot. ("Kentucky Resp.") 1, 11.

Neither attempt to argue that skipping a procedural step constitutes something other than procedural error. *Cf. Am. Petroleum Inst. v. Costle*, 665 F.2d 1176, 1189 (D.C. Cir. 1981) (declining to invalidate ozone NAAQS even though EPA failed to follow proper process and submit standard to Scientific Advisory Board); *Coal. for Responsible Regul., Inc. v. EPA*, 684 F.3d 102, 124 (D.C. Cir. 2012) (same) (*rev'd on other grounds by Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014). And to the extent EPA and Petitioners assert that EPA failed to properly explain its authority for a targeted review, that too constitutes a procedural error under this Court's case law. *Ne. Maryland Waste Disposal Auth. v. EPA*, 358 F.3d 936, 948-50 (D.C. Cir. 2004) (failure to adequately justify permissible action is procedural error under Section 307(d)(8)).

Industry Petitioners at least assert that EPA's alleged error is substantive, but they offer no explanation for that assertion. Indus. Pet'rs' Resp. In Supp. Of EPA Mot. ("Indus. Resp.") 15. And the only Clean Air Act case they cite in their

discussion of vacatur, *Sierra Club v. EPA*, 705 F.3d 458 (D.C. Cir. 2013), faulted EPA for the lack of *any* statutory authority for the action challenged there. *Id.* at 465. Here, neither EPA nor Petitioners contend that EPA lacked authority to update the NAAQS. Instead, they argue EPA went about the process of updating in the wrong way. That is classic procedural error. *Cf. id.* (contrasting lack of substantive authority with example of potentially curable procedural error of defective notice-and-comment) (distinguishing *Fertilizer Inst. v. EPA*, 935 F.2d 1303 (D.C. Cir. 1991)).

### 2. EPA Has Not Shown that Additional Process or Explanation Would Likely Have Changed the Result

Neither EPA nor Petitioners even try to establish a substantial likelihood that either undertaking a "thorough review," or further explaining its authority for a targeted review, would have changed the standard set by the 2024 Rule. They have thus forfeited the argument that they satisfy the Clean Air Act's standards for vacatur based on procedural error.

And they could not meet that standard if they tried. Even if EPA had engaged in a "thorough review," no party has shown—or even attempted to show—that the additional process would likely have changed the outcome of the rulemaking. State Petitioners assert that "neither the Court nor the parties can speak with certainty of the decision EPA" would have reached, Kentucky Resp. 7, but that comes nowhere close to the Act's "substantial likelihood" standard. In any event, as EPA

persuasively argued in its merits brief and at oral argument—and does not dispute in its motion—the 2024 Rule rests on a solid scientific foundation. That foundation includes not just the 2020 "thorough review" and its Integrated Science Assessment (ISA) but also the 2022 ISA Supplement. That Supplement reaffirmed and strengthened EPA's prior conclusions that $PM_{2.5}$ exposure is associated with cardiovascular effects and mortality, discussing new studies addressing gaps identified during the prior 2020 "thorough review." EPA Br. 18-19, 30-31. And EPA's Clean Air Scientific Advisory Committee unanimously agreed that the 12 $\mu g/m^3$ annual $PM_{2.5}$ standard retained in 2020 was inadequate to protect public health. *Id*. 20.

EPA now argues that the 2022 ISA Supplement should have also covered the effects of particulate matter beyond cardiovascular harms and mortality. Mot. 14. But neither EPA nor Petitioners suggest doing so would be, or even could be, substantially likely to have resulted in a weaker standard. Indeed, despite multiple rounds of public comments and briefs, neither EPA nor Petitioners can point to any even potentially relevant evidence EPA might have missed by conducting a targeted review.[2]

---

[2] On rebuttal at oral argument, counsel for Industry Petitioners referenced, for the first time and without elaboration, two studies attached to a comment letter by consulting firm Gradient on EPA's Supplemental draft ISA. Oral Arg. Tr. 87 (citing EPA-HQ-ORD-2014-0859-0077 (Nov. 23, 2021)). Petitioners did not

(continued…)

EPA's purported failure to identify its authority for a targeted review also does not meet the Clean Air Act's procedural-error standard for vacatur. Had EPA needed it, further explanation of its authority under Section 109 was readily available. *See* EPA Br. 28-45; State Intv. Br. 4-11; NGO Opp. Sec. II. In addition, the agency could have simply granted (and still could grant) the pending petitions for mandatory administrative reconsideration under Section 307(d)(7)(B), 42 U.S.C. § 7607(d)(7)(B).[3] These petitions raised the same issues analyzed in EPA's 2024 Rule. State Intv. Br. 11-12. They thus provided EPA independent grounds to review all the same evidence and come to all the same conclusions without the

---

explain then, and cannot explain now, how a "thorough review" would have addressed these studies—which examine the link between asthma and ozone, not $PM_{2.5}$— in a way EPA's targeted review did not. Nor do they explain how doing so would likely have significantly changed the 2024 Rule. Indeed, the cited comment, faulted EPA's targeted review for replicating the alleged mistakes in EPA's previous "thorough review," undercutting any argument that conducting another "thorough review" likely would have significantly changed the result of the reconsideration.

[3] Section 307(d)(7)'s provision for mandatory reconsideration is no "as-yet-unidentified provision[]," as State Petitioners suggest. Kentucky Resp. 10. The provision was front-and-center during both the rulemaking and the litigation. EPA pointed to the petitions filed under this provision when announcing its reconsideration and when finalizing it. 89 Fed. Reg. 16,202, 16,211 (Mar. 6, 2024), JA0172. State Intervenors' merits brief addressed them (at 11-12), and they came up again at oral argument, Oral Arg Tr. 69-71 (EPA referring to petitions and saying reconsideration "results in the same proceeding as reviewing and then revising"); *accord* 85-86 (State Intervenors' argument).

"thorough review" that EPA now claims is required by Section 109(d). In short, EPA could have undertaken a process identical in all but name.[4]

## B. Even If the Errors EPA Asserts Were Substantive, Vacatur Would Be Unwarranted

To the extent EPA asserts a substantive error in the 2024 Rule, vacatur is still not the appropriate remedy. Under this Court's *Allied-Signal* test, "[a]n inadequately supported rule … need not necessarily be vacated." *Allied-Signal v. U.S. Nuclear Regulatory Com'n*, 988 F.2d at 150. Instead, the Court looks to "(1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur." *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019).

### 1. EPA's Purported Errors Could Easily Be Justified on Remand

The first *Allied-Signal* factor "asks whether the agency could correct the deficiencies identified and reach the same ultimate decision." *City of Port Isabel v. FERC*, 130 F.4th 1034, 1036-37 (D.C. Cir. 2025). Where "there is a strong possibility that the Agency can properly explain its decision" on remand, this

---

[4] The availability of targeted reconsideration authority under Section 307(d) also undermines Petitioners' claim to *any* relief, under the harmless error doctrine. *See Prohibition Juice Co. v. U.S. Food & Drug Admin.*, 45 F.4th 8, 24 (D.C. Cir. 2022) (reliance on grounds not expressed in underlying rulemaking permissible when considering harmless error).

factor weighs against vacatur. *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 652 (D.C. Cir. 2016). As explained above and in the NGOs' opposition, the asserted error that EPA did not adequately explain its authority for a targeted review could easily be remedied on remand. EPA's and Petitioners' arguments to the contrary all fail.

For example, EPA argues that, even if the Clean Air Act allows for targeted NAAQS review, the agency does not want to fix the 2024 Rule's purported failure to explain why. Mot. 22. But, as EPA acknowledges, the *Allied-Signal* test asks whether the agency *can* justify its actions on remand, not whether it *will*. *Id.*[5]

Petitioners argue that EPA cannot offer a further explanation of its authority on remand. State Petitioners agree with EPA that no authority besides Section 109(d) can justify a targeted review. Kentucky Resp. 11. That argument is both wrong and in direct conflict with State Petitioners' party-presentation argument, Kentucky Resp. 8, that the Court cannot evaluate any other provisions because (allegedly) the parties did not cite them in the briefs. If the party-presentation principle precludes judicial evaluation of provisions other than Section 109(d), it

---

[5] While an agency's lack of plans for future administrative action may weigh against voluntary remand, that does not mean the agency is entitled to remand with vacatur instead. *Cf.* Mot. 22 (citing *Limnia, Inc. v. Dept' of Energy*, 857 F.3d 379, 386 (D.C. Cir. 2017)). The cases rejecting remand in those circumstances— including the case EPA cites—typically do so to prevent remand's use as a ploy to avoid judicial review or otherwise prejudice the non-moving party's claims. *Limnia*, 857 F.3d at 386; *Lutheran Church-Missouri Synod v. F.C.C.*, 141 F.3d 344, 349 (D.C. Cir. 1998); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 437 (D.C. Cir. 2018).

also precludes judicial prejudgment of EPA's evaluation of those provisions on remand. And State Petitioners cite no cases in which the principle has led to remand with vacatur.[6]

Industry Petitioners separately claim the *Chenery* doctrine, from *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), "makes it impossible for EPA," on remand, to address other sources of targeted-review authority besides Section 109(d). Indus. Resp. 16. They argue EPA would have to take new action to do so, because the agency did not cite other sources of authority in the record. *Id*. But Industry Petitioners' premise is mistaken. As State Intervenors explained at oral argument, Oral Arg. Tr. 84:21-85:5 (citing JA2799), EPA's record invoked numerous sources of authority for its targeted review, and further explanation would be readily available on remand.

_____

[6] State Petitioners' argument that EPA "skipped a fundamental procedural step," Kentucky Resp. 11, is wrong, and would not avoid the Clean Air Act's provision for procedural errors. But even outside the Clean Air Act, "not all procedural omissions point toward vacatur with the same force." *City of Port Isabel v. FERC*, 130 F.4th 1034, 1037 (D.C. Cir. 2025). And in contrast to authorizing pipeline construction "without issuing any environmental impact statement whatsoever," or "bypass[ing] required notice and comment rulemaking altogether," EPA's targeted reconsideration of the 2020 Rule was a multi-step process that involved "years of review and public comment," and "[a]ny further proceedings [EPA] would need to undertake pertain to specific, discrete subjects." *Id*.

EPA asserts one other error, that it should have somehow considered costs before engaging in its targeted review. Mot. 18-21. But EPA does not even attempt to argue consideration of costs would have led to a different outcome. Nor could EPA reasonably make such a showing. EPA's analysis of the 2024 Rule—which EPA has not disavowed and Petitioners have not disputed—estimated the 2024 Rule's implementation benefits to be roughly 100 times greater than its implementation costs. Amicus Br. of Inst. for Pol'y Integrity ("IPI Amicus") at 8-9, ECF#2071857. Accordingly, if the 2024 Rule were remanded to EPA to consider implementation costs, it would be unreasonable for the agency to do anything other than "correct the deficiencies identified and reach the same ultimate decision." *City of Port Isabel*, 130 F.4th at 1037 (quotation marks omitted).[7]

### 2. Remand Without Vacatur Respects State Planning Efforts and Protects Health and the Environment

The second *Allied-Signal* factor considers vacatur's potential disruptive effects. This factor weighs against vacatur of the 2024 Rule as well, because

---

[7] The subsequent history of the regulation challenged in *Michigan v. EPA,* 576 U.S. 743 (2015) (cited at Mot. 19, 21) is instructive. After the Supreme Court held EPA must consider costs in determining whether it was appropriate to issue the regulation, this Court remanded to EPA without vacating the regulation itself, and the Supreme Court declined to review. Order, *White Stallion Energy Center v. EPA*, No. 12-1100 (D.C. Cir. Dec. 15, 2015), ECF#1588459 (cert. denied *sub nom*. *Michigan v. EPA*, 136 S.Ct. 2463 (2016)). On remand, EPA issued a supplemental finding supporting its decision, pointing in large part to the massive benefits that would come from concomitant reductions in fine particulate matter. 81 Fed. Reg. 24,420 (April 25, 2016).

vacatur would disrupt ongoing state permitting and planning efforts and threaten public health and the environment more broadly. *See North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) (ordering remand without vacatur to "at least temporarily preserve the environmental values covered by" the challenged air-pollution rule).

The 2024 Rule remains in effect and continues to govern permitting decisions for new major sources of air pollution, ensuring that new facilities do not cause areas in compliance with the 2012 standard to exceed the 2024 standard. *See U.S. Sugar*, 830 F.3d at 630 (citing disruptive effect of "removing emission limits" for regulated pollutants).

And States are already implementing the 2024 Rule in other ways. In February 2025, States submitted proposals for EPA to designate areas as in or out of attainment with the 2024 Rule's standard, and await EPA action on those proposals.[8] Meanwhile, development of State Implementation Plans for the 2024 Rule is already underway. *See*, *e.g.*, California Air Resources Board, "SIPS for the 9 ug/m3 PM2.5 Standard," https://ww2.arb.ca.gov/our-work/programs/california-

---

[8] The February 2026 deadline for EPA action on designations does not support vacatur, even assuming EPA will meet the deadline. EPA asked for abeyance despite its awareness of that deadline, dismissing concerns NGO Intervenors' expressed about it as "outside the scope of this litigation." EPA's Reply in Supp. of Mot. to Extend Abeyance for an Add'l 30 Days at 3 (July 7, 2025), ECF#2124083. EPA cannot now complain that the approach of the deadline requires this Court to take quick action.

state-implementation-plans/statewide-efforts/sips-9-mgm3-pm2-5 (citing

December 2024 workshop and January 2025 public hearing). Maintaining the 2024

Rule will support these implementation efforts, with important benefits to State

Intervenors. As explained at the intervention stage, these benefits include—among

others—new regulatory authorities, eligibility for grants, and greater enforcement

tools. Movant-Intervenor States' Unopposed Mot. for Leave to Intervene in Supp.

of Resp'ts at 15 (April 5, 2024) ECF#2048506.

Moreover, the health and environmental protections from leaving the 2024

Rule in effect are massive, and no one seriously contends otherwise.

Notwithstanding State Petitioners claim that vacatur would pose "little risk of

interfering with environmental protection," Kentucky Resp. 13, nobody disputes

EPA's conclusion that attainment of the 2024 Rule's standards will save thousands

of lives and prevent hundreds of thousands of other serious health harms annually.

*See* IPI Amicus at 13. If EPA prefers to revert to the prior standards, it should do

so through notice-and-comment rulemaking, not by asking this Court for vacatur.

## CONCLUSION

For the foregoing reasons, the motion should be denied.

Dated:  December 16, 2025

Respectfully Submitted,

FOR THE STATE OF CALIFORNIA

ROB BONTA
ATTORNEY GENERAL

*/s/ Jonathan A. Wiener*

JONATHAN A. WIENER
STACY LAU
COREY M. MOFFAT
*Deputy Attorneys General*
Office of the Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
Telephone: (415) 510-3549
Jonathan.Wiener@doj.ca.gov

FOR THE STATE OF ARIZONA

KRISTIN K. MAYES,
ATTORNEY GENERAL

*/s/ Kirsten Engel*

KIRSTEN ENGEL
Assistant Attorney General
Environmental Protection Unit
2005 N. Central Ave
Phoenix, AZ 85004
(520) 209-4020
Kristen.Engel@azag.gov
ENVProtect@azag.gov

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
ATTORNEY GENERAL

*/s/ Matthew I. Levine*

MATTHEW I. LEVINE
Deputy Associate Attorney General
JILL LACEDONIA
Assistant Attorney General
Connecticut Office of the Attorney
General
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5250
jill.lacedonia@ct.gov

FOR THE STATE OF ILLINOIS

KWAME RAOUL
ATTORNEY GENERAL

*/s/ Jason E. James*
JASON E. JAMES
Assistant Attorney General
MATTHEW J. DUNN
Chief, Environmental
Enforcement/Asbestos Litigation Division
Office of the Attorney General
201 W. Pointe Drive, Suite 7
Belleville, IL 62226
(872) 276-3583
jason.james@ilag.gov

FOR THE COMMONWEALTH OF
MASSACHUSETTS

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

*/s/ Turner Smith*
TURNER SMITH
Assistant Attorney General & Deputy
Chief
BRIAN CLAPPIER
Assistant Attorney General
MARCUS HOLMES
Assistant Attorney General
Energy & Environment Bureau
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200
Turner.Smith@mass.gov

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN
ATTORNEY GENERAL

*/s/ Michael F. Strande*
MICHAEL F. STRANDE
Assistant Attorney General
Office of the Attorney General
Maryland Dept. of the Environment
1800 Washington Blvd.
Baltimore, MD 21230
(410) 537-3014
Michael.Strande@maryland.gov

FOR THE PEOPLE OF THE STATE OF
MICHIGAN

*/s/ Elizabeth Morrisseau*
ELIZABETH MORRISSEAU
Assistant Attorney General
Environment, Natural Resources, and
Agriculture Division
6th Floor G. Mennen Williams Building
525 W. Ottawa Street
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
MorrisseauE@michigan.gov

FOR THE STATE OF MINNESOTA

KEITH ELLISON
ATTORNEY GENERAL

*/s/ Peter N. Surdo*
PETER N. SURDO
Special Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, MN 55101
(651) 757-1061
Peter.Surdo@ag.state.mn.us

FOR THE STATE OF NEW JERSEY

MATTHEW J. PLATKIN
ATTORNEY GENERAL

*/s/ Lisa Morelli*
LISA MORELLI
Deputy Attorney General
Division of Law
25 Market Street
P.O. Box 093
Trenton, NJ 08625-093
609-376-2740
lisa.morelli@law.njoag.gov

FOR THE STATE OF NEW YORK

LETITIA JAMES
ATTORNEY GENERAL

*/s/ Barbara D. Underwood*
BARBARA D. UNDERWOOD
Solicitor General
JUDITH N. VALE
Deputy Solicitor General
ELIZABETH A. BRODY
Assistant Solicitor General
MICHAEL J. MYERS
Senior Counsel
NICHOLAS C. BUTTINO
Assistant Attorney General
Environmental Protection Bureau
The Capitol
Albany, NY 12224
(518) 776-2382
michael.myers@ag.ny.gov

FOR THE STATE OF OREGON

DAN RAYFIELD
ATTORNEY GENERAL

*/s/ Paul Garrahan*
PAUL GARRAHAN
Attorney-in-Charge
Natural Resources Section
Oregon Department of Justice
1162 Court Street NE
Salem, Oregon 97301-4096
(503) 947-4540
Paul.Garrahan@doj.oregon.gov

FOR THE STATE OF RHODE ISLAND

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Nicholas M. Vaz*
NICHOLAS M. VAZ
Special Assistant Attorney General
Chief, Environment and Energy Unit
Rhode Island Office of the Attorney
General
150 South Main Street
Providence, RI 02903
Phone: (401) 274-4400 ext. 2297
Email: nvaz@riag.ri.gov

FOR THE STATE OF VERMONT

CHARITY R. CLARK
ATTORNEY GENERAL

*/s/ Melanie Kehne*
MELANIE KEHNE
Assistant Attorney General
Office of the Attorney
General
109 State Street
Montpelier, VT 05609
(802) 828-3171
Melanie.kehne@vermont.gov

FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
ATTORNEY GENERAL

*/s/ Jennifer Slocum*
JENNIFER SLOCUM
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504-0117
(360) 586-6741
jenna.slocum@atg.wa.gov

FOR THE STATE OF WISCONSIN

JOSHUA L. KAUL
ATTORNEY GENERAL

*/s/ Bradley J. Motl*
BRADLEY J. MOTL
Assistant Attorney General
Wisconsin Department of Justice
Post Office Box 7857
Madison, WI 53707-7857
(608) 267-0505
bradley.motl@wisdoj.gov

FOR THE DISTRICT OF COLUMBIA

BRIAN L. SCHWALB
ATTORNEY GENERAL

*/s/ Caroline S. Van Zile*
CAROLINE S. VAN ZILE
Solicitor General
Office of the Attorney General for the
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

FOR THE CITY OF NEW YORK

MURIEL GOODE-TRUFANT
CORPORATION COUNSEL

*/s/ Nathan Taylor*
NATHAN TAYLOR
Senior Counsel
New York City Law Department
100 Church Street
New York, NY 10007
212.356.2074
ntaylor@law.nyc.gov

FOR HARRIS COUNTY, TEXAS

*/s/ Sarah Jane Utley*
SARAH JANE UTLEY
Environmental Division Director
ELIZABETH HIDALGO
Assistant County Attorney
1019 Congress Plaza, 15th Floor
Houston, Texas 77002
713.274.5124
Sarah.Utley@cao.hctx.net

IRVINE & CONNER PLLC
CHARLES IRVINE
JANET CAMPOS
4709 Austin Street
Houston, Texas 77004
713.533.1704
charles@irvineconner.com

SF2024400531

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that:

1.      The foregoing  document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2)(A) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), the brief contains <u>5,159</u> words and thus does not exceed the 5,200-word limit.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(b) because the brief has been prepared in proportionally spaced typeface using Microsoft Word word-processing system in Times New Roman that is at least 14 points.

Dated: December 16, 2025

<u>/s/ Jonathan A. Wiener</u>
JONATHAN WIENER

**CERTIFICATE OF SERVICE**

I hereby certify that on this December 16, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: December 16, 2025

_/s/ Jonathan A. Wiener_
Declarants Name