Case No. 24-1050 and Consolidated Cases

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE D.C. CIRCUIT

---

COMMONWEALTH OF KENTUCKY, ET AL.,
*Petitioners*,

v.

U.S. ENVIRONMENTAL PROTECTION AGENCY, ET AL.,
*Respondents*.

---

On Petitions for Review of Action by Environmental Protection Agency

---

# RESPONDENTS' REPLY IN SUPPORT OF MOTION FOR VACATUR

---

<table>
<tr><td></td><td>ADAM R.F. GUSTAFSON<br>*Principal Deputy Assistant Attorney General*</td></tr>
<tr><td>*Of Counsel*:<br>ISABELLA SMITH<br> U.S. Environmental Protection Agency<br> Office of General Counsel</td><td>ROBERT N. STANDER<br>*Deputy Assistant Attorney General*<br>SARAH IZFAR<br>*Trial Attorney*<br> U.S. Department of Justice<br> Environmental Defense Section<br> P.O. Box 7611<br> Washington, DC 20044<br> (202) 532-3050<br> Sarah.izfar@usdoj.gov<br><br>*Counsel for Respondents*</td></tr>
</table>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iv

GLOSSARY ........................................................................................................ viii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.     EPA exceeded its statutory authority by revising a standard
without completing a thorough review. ........................................................ 2

     A.     EPA must complete a thorough review before revising
standards. .................................................................................... 2

     B.     Section 109(b)(1) does not provide standalone
reconsideration authority. ........................................................... 7

     C.     Completing a thorough review comports with EPA's
longstanding practice. ............................................................... 10

     D.     Legislative history and purpose do not override the text
of Section 109(d)(1). ................................................................ 12

     E.     Whether the Rule promulgated a new standard or revised
a standard, the result is the same. ............................................. 14

II.     Even if EPA could revise the standard without a thorough
review, EPA abused its discretion by ignoring cost. .................................. 15

III.     The Motion is procedurally proper. ........................................................... 17

IV.     The Court should vacate because EPA exceeded its statutory
authority and failed to consider a relevant aspect of the
problem. ..................................................................................................... 18

     A.     EPA's errors were serious. ......................................................... 18

          1.     EPA committed substantive errors, not mere
procedural defects. ......................................................... 18

2. EPA's errors cannot be corrected on remand. ...........................21

B. Vacatur would not be unduly disruptive. .............................................22

CONCLUSION...................................................................................................23

CERTIFICATE OF COMPLIANCE...................................................................24

# TABLE OF AUTHORITIES

**CASES**

*Agnew v. Gov't of D.C.*,
920 F.3d 49 (D.C. Cir. 2019) ............................................................................9

*Air All. Hous. v. EPA*,
906 F.3d 1049 (D.C. Cir. 2018) .......................................................................19

*Allied–Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) .........................................................................18

*Am. Methyl Corp. v. EPA*,
749 F.2d 826 (D.C. Cir. 1984) ...........................................................................8

*Azar v. Allina Health Servs.*,
587 U.S. 566 (2019) ........................................................................................13

*Coal. for Renewable Nat. Gas v. EPA*,
108 F.4th 846 (D.C. Cir. 2024) .......................................................................20

*Comcast Corp. v. FCC*,
579 F.3d 1 (D.C. Cir. 2009) .............................................................................22

*Davis Cnty. Solid Waste Mgmt. v. EPA*,
101 F.3d 1395 (D.C. Cir. 1996) *opinion amended on reh'g*, 108 F.3d 1454 (D.C. Cir. 1997) ...........................................................................................................19

*DHS v. Regents of Univ. of Cal.*,
591 U.S. 1 (2020) ............................................................................................22

*Encino Motorcars, LLC v. Navarro*,
584 U.S. 79 (2018) ............................................................................................6

*Humane Soc'y v. Zinke*,
865 F.3d 585 (D.C. Cir. 2017) .........................................................................22

*Ivy Sports Med., LLC v. Burwell*,
767 F.3d 81 (D.C. Cir. 2014) .............................................................................7

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ................................................................................. 10, 17

*Michigan v. EPA,*
  576 U.S. 743 (2015)......................................................................16

*N.H. Lottery Comm'n v. Rosen,*
  986 F.3d 38 (1st Cir. 2021)..............................................................4

*Nat'l Parks Conservation Ass'n v. Jewell,*
  62 F. Supp. 3d 7 (D.D.C. 2014).............................................. 22, 23

*NRDC v. Wheeler,*
  955 F.3d 68 (D.C. Cir. 2020).........................................................20

*Ohio v. EPA,*
  603 U.S. 279 (2024)......................................................................20

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
  566 U.S. 639 (2012)......................................................................6, 9

*Sierra Club v. EPA,*
  21 F.4th 815 (D.C. Cir. 2021)...........................................................5

*Sturgeon v. Frost,*
  577 U.S. 424 (2016).........................................................................3

*Sugar Cane Growers Co-op. of Fla. v. Veneman,*
  289 F.3d 89 (D.C. Cir. 2002)..........................................................23

*Sw. Airlines Co. v. Saxon,*
  596 U.S. 450 (2022).......................................................................12

*Waterkeepers Chesapeake v. FERC,*
  56 F.4th 45 (D.C. Cir. 2022)...........................................................21

*Van Buren v. United States,*
  593 U.S. 374 (2021).........................................................................5

*Yellen v. Confederated Tribes of Chehalis Rsrv.,*
  594 U.S. 338 (2021).........................................................................5

**STATUTES**

42 U.S.C. § 7408(c) ............................................................................6

42 U.S.C. § 7409(a) ....................................................................................7

42 U.S.C. § 7409(b)(1)................................................................ 7, 12, 20

42 U.S.C. § 7409(d)(1)...................................................................... 2, 3

42 U.S.C. § 7416 ......................................................................................24

42 U.S.C. § 7607(d)(2)-(8) ....................................................................20

42 U.S.C. § 7607(d)(7)(B) ......................................................................14

42 U.S.C. § 7607(d)(8)............................................................................21

42 U.S.C. § 7607(d)(9)(A) ......................................................................20

42 U.S.C. § 7607(d)(9)(B) ......................................................................20

42 U.S.C. § 7607(d)(9)(C) ................................................................ 19, 20

42 U.S.C. § 7607(d)(9)(D) ......................................................................20

**FEDERAL REGISTER**

48 Fed. Reg. 37519 (Aug. 18, 1983) ....................................................11

51 Fed. Reg. 11058 (Apr. 1, 1986) ........................................................11

57 Fed. Reg. 35542 (Aug. 10, 1992) ....................................................11

58 Fed. Reg. 13008 (Mar. 9, 1993)........................................................12

59 Fed. Reg. 58958 (Nov. 15, 1994) .....................................................11

62 Fed. Reg. 38856 (July 18, 1997).......................................................10

68 Fed. Reg. 614 (Jan. 6, 2003).............................................................11

72 Fed. Reg. 71488 (Dec. 17, 2007).......................................................11

73 Fed. Reg. 66964 (Nov. 12, 2008) .....................................................15

75 Fed. Reg. 2938 (Jan. 19, 2010) .........................................................11

87 Fed. Reg. 25485 (Apr. 29, 2022) ......................................................11

89 Fed. Reg. 16202 (Mar. 6, 2024)...................................................................14

89 Fed. Reg. 105692 (Dec. 27, 2024)..............................................................15

# GLOSSARY

| | |
|---|---|
| Act | Clean Air Act |
| EPA | United States Environmental Protection Agency |
| NAAQS or standard | National Ambient Air Quality Standard |
| Rule | *Reconsideration of the National Ambient Air Quality Standards for Particulate Matter*, 89 Fed. Reg. 16202 (Mar. 6, 2024) |

**INTRODUCTION**

Contrary to the Clean Air Act's directive and longstanding agency practice, EPA purported to "reconsider" a national ambient air quality standard (NAAQS or standard) for fine particulate matter without completing the mandatory "thorough review" of the underlying air quality criteria and related standards. This circumvention of the statute was unlawful. Because this legal error is fundamental and cannot be rectified on remand, the Court should vacate the Rule.

Even if, as Intervenors contend, the Act separately confers an additional authority to revise the standards without a thorough review, EPA exercised any such discretion unreasonably by refusing to consider the costs associated with an additional, off-cycle revision. The Court should therefore alternatively vacate the Rule because EPA failed to consider an important aspect of the problem.

No party disputes that EPA failed to complete a thorough review before revising the standards or that EPA failed to consider the costs of its revision. Intervenors attempt to salvage the Rule by raising, in some instances for the first time, incorrect or irrelevant arguments. None of these arguments has any bearing on the question before the Court: whether Congress authorized the Agency to revise the standard without undertaking the "thorough review" required by Section 109(d)(1) of the Act. The best reading of the statute—the reading EPA has applied for nearly fifty years—is that Section 109(d)(1) governs revisions, and Section

1

109(b) governs the content and procedure for promulgating standards. The second sentence of Section 109(d)(1) merely clarifies that EPA may complete thorough reviews before the five-year deadline. Because EPA did not complete a thorough review before revising the standard, the Rule is unlawful. EPA joins Petitioners in seeking vacatur and agrees with all parties that the Court should resolve this case expeditiously.

## ARGUMENT

**I.     EPA exceeded its statutory authority by revising a standard without completing a thorough review.**

EPA's Motion corrects its erroneous statutory interpretation presented in 2024. EPA Mot., ECF No. 2147050. The best reading of the statute is that Section 109(d)(1) establishes requirements that define the scope of EPA's revision authority by mandating a thorough review of the underlying air quality criteria and related standards before revising those standards. EPA Mot. 9-15. Because EPA did not comply with this requirement, it exceeded its statutory authority. *Id*.

**A.     EPA must complete a thorough review before revising standards.**

Applying traditional interpretive principles, Section 109(d)(1) is best read as setting out substantive requirements, including the completion of a thorough review, before EPA may revise the NAAQS. 42 U.S.C. § 7409(d)(1). The first sentence provides:

2

> [A]t five-year intervals thereafter [EPA] shall complete a **thorough** review of the criteria published under section [108] of this title and the national ambient air quality standards promulgated under [section 109] and shall make such revisions in such criteria and **standards** and promulgate such new standards as may be appropriate **in accordance with section [108] of this title and subsection (b) of this section**.

*Id.* (emphasis added). The second sentence provides that EPA "may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph." *Id*.

Read in context, the second sentence of Section 109(d)(1) incorporates requirements from the first. *See Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). The second sentence mirrors the first by referring to "review," "criteria," and "standards," without repeating the first sentence's precise phrasing. Congress had no need to repeat that phrasing because "under this paragraph" in the second sentence refers to and incorporates the entirety of Section 109(d)(1), which addresses EPA's revision authority and obligations. Congress thus made clear that the second sentence modified only the timing obligation in the first sentence—authorizing EPA to complete a thorough review earlier than five years. Regardless of timing, EPA "shall complete a thorough review . . . *and* shall make such revisions as may be appropriate" to ensure the criteria and standards reflect recent scientific information and adequately protect public health. 42 U.S.C. § 7409(d)(1) (emphasis added).

While certain words in the first sentence (bolded above) do not appear in the second sentence, given the proximity of the two sentences, the second sentence is best understood as a shorthand reference to the first. EPA Mot. 13; *see also N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 57 (1st Cir. 2021) (concluding that Congress used "shorthand to carry over a phrase from Clause One to Clause Two, which may suggest a broader pattern of borrowing by shorthand"). *Contra* NGO Resp. 22-23, ECF No. 2150736. Regarding the absence of "thorough," it would have been odd for Congress to use "review" in the second sentence if it intended to obviate the thorough review specified one sentence earlier. The second sentence also omits language addressing "revisions in . . . standards," that appears in the first sentence. But it is not reasonable to conclude that Congress intended to allow accelerated revision authority of criteria but not standards. And if Congress intended that result, EPA would have no discretionary revision authority to promulgate the challenged Rule under this subsection—a position at odds with Intervenors' arguments. *See id.* at 22.[1] Indeed, Intervenors insist that the purpose of the second sentence of Section 109(d)(1) is to enable EPA to act more nimbly to ensure that standards are sufficiently supported by science. *Id.* at 27, 40.

---

[1] For similar reasons, it is insignificant that the second sentence of Section 109(d)(1) does not include "criteria published under section [108] of this title" or "standards promulgated under this section," which are in the first sentence.

4

Decoupling two related sentences in the same paragraph ignores the statutory context and produces an absurd result. *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 594 U.S. 338, 359 (2021) ("The most grammatical reading of a sentence in a vacuum does not always produce the best reading in context."). The better reading is that, in context, the second sentence of Section 109(d)(1) incorporates the "thorough review" requirement of the first and simply clarifies that EPA may complete a thorough review of the criteria and revise the NAAQS earlier than at five-year intervals.

None of Intervenors' examples demonstrates that EPA has improperly read the two sentences together. *Contra* NGO Resp. 23. Those cases interpret different provisions, relying on different statutory canons. In *Van Buren v. United States*, the Supreme Court analyzed the meaning and scope of "so." 593 U.S. 374, 384 (2021). *Sierra Club v. EPA* examined the meaning of "such pollutant" to determine the correct referent. 21 F.4th 815, 820 (D.C. Cir. 2021). Section 111(b)(1)(B), 42 U.S.C. § 7411(b)(1)(B), likewise does not inform the meaning of Section 109(d)(1). That sub-paragraph imposed a different mandatory duty using a different formulation. EPA's interpretation does not hinge on the concept that Congress must use specific language to create a cross reference. Rather, two sentences in the same paragraph of the statute should be read together as one "paragraph."

Nor does EPA's interpretation collapse the meaning of "and" and "or."[2] NGO Resp. 24-25.  The first sentence uses "and" because it establishes a nondiscretionary duty for EPA to complete a thorough review of both the criteria *and* the standards at five-year intervals before any revisions.  But the phrase "as appropriate" in the first sentence makes clear that, while the review is mandatory, revisions *or* new standards are not.  The second sentence similarly uses "or" to recognize that EPA may review earlier and decide no revisions are necessary.  But EPA does not dispute that its reading makes "reviewing criteria a mandatory predicate to updating NAAQS."  *Id*. 25.  That is the best reading of the statute.

Intervenors assert that EPA's interpretation renders Section 108(c) superfluous.  NGO Resp. 25-26.  Section 108(c), which mostly predates Section 109(d)(1), establishes a mandatory duty to review "from time to time" and "as appropriate" revise criteria and information on control techniques.  42 U.S.C. § 7408(c).  Section 108(c)'s review requirement now overlaps with the first sentence of Section 109(d)(1), which also imposes a specific mandatory duty to review every five years.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (The terms of a specific authorization govern over a general one).  But Section 108(c) continues to require periodic updates as to

---

[2] Regardless, the "and/or" distinction is not immutable.  *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 87 (2018).

control techniques, and Section 109(d)(1) does not render any part of Section 108(c) superfluous. In fact, Section 108(c) does not touch on the second sentence of Section 109(d)(1), which does not impose a mandatory duty on EPA to review and revise the air quality criteria as part of the NAAQS review process.

With Section 109(d)(1), Congress provided the mechanism for EPA to revise the NAAQs, and this provision displaces any inherent reconsideration authority. *Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 86 (D.C. Cir. 2014). Intervenors read this Court's precedents too narrowly. NGO Resp. 19-20. The statutory authority of the later-added Section 109(d)(1) "covers the same concerns" and addresses the "same result" as the implicit authority Intervenors claim derives from Section 109(b). *Ivy Sports*, 767 F.3d at 87.

**B.    Section 109(b)(1) does not provide standalone reconsideration authority.**

Intervenors now argue for the first time that the concluding sentence of Section 109(b) confers additional authority to revise the standards at will. NGO Resp. 11-20. But that portion of Section 109(b)(1) is best read as a procedural reference to the proposal-and-promulgation process enumerated in Section 109(a). *See* 42 U.S.C. § 7409(a), (b)(1); EPA Mot. 16-17. Section 109(b)(1) is not an open-ended authorization to revise the NAAQS. *Id.* Accordingly, the implied repeal doctrine does not apply here. *Contra* NGO Resp. 19.

EPA agrees that subsections (b)(1) and (d)(1) of Section 109, which serve different functions, must be read together and reconciled. *See id*. 4. The former establishes the notice-and-comment procedure for revising the standard ("in the same manner as promulgated") and the latter establishes the substantive requirements that EPA must follow to undertake such revisions (a "thorough review"). EPA Mot. 15-18. Before Section 109(d) was enacted, EPA's revision authority came not from Section 109(b)(1) but from the inherent or implicit statutory authority agencies possess to revise their own regulations. *See Am. Methyl Corp. v. EPA*, 749 F.2d 826, 835 (D.C. Cir. 1984).

Intervenors' reading, that the second sentence of Section 109(d)(1) reaffirmed the preexisting authority to revise the standard under Section 109(b)(1), fails on multiple grounds. *Contra* NGO Resp. 14. First, Intervenors misunderstand the statutory history. Before Congress enacted Section 109(d) in 1977, EPA's authority to revise standards was largely implied, and, aside from the procedure, the requirements for revision were unclear. The addition of Section 109(d)(1) reflects an iterative development during a time when the Act was undergoing significant change.

Second, it is Intervenors, by arguing that Section 109(b)(1) contains express NAAQS revision authority, who render Section 109(d)(1) superfluous. *Contra* NGO Resp. 12. The better reading, with which Intervenors agree elsewhere, is that

the last sentence in Section 109(b)(1) refers solely to notice-and comment rulemaking. *Id*. at 18 ("Context also supports reading 'in the same manner as promulgated' as speaking strictly to the notice-and-comment process."). The Court should avoid an interpretation that renders the second sentence of Section 109(d)(1) superfluous of Section 109(b)(1). *See Agnew v. D.C.*, 920 F.3d 49, 57 (D.C. Cir. 2019).

Third, Section 109(d)(1), which establishes specific requirements for revising the standards, takes precedence over the general language in Section 109(b)(1). Intervenors contend that the general/specific canon applies only if a clear conflict exists. NGO Resp. 18-19. But "the canon has full application as well to statutes . . . in which a general authorization and a more limited, specific authorization exist side-by-side." *RadLAX Gateway Hotel*, 566 U.S. at 645. Section 109(b) references EPA's implicit authority to revise the standards, but Section 109(d)(1) prescribes actual requirements for doing so. Applying the canon "avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one[.]" *Id*.

Intervenors misunderstand EPA's alternative argument. NGO Resp. 17. EPA's primary argument is that Section 109(b)(1) specifies the procedures for revising the standard and that Section 109(d)(1) specifies the substantive requirements. EPA Mot. 15-18. In the alternative, EPA argued that even if

9

Section 109(b)(1) provides substantive revision authority, that can still be harmonized with the thorough review requirement in Section 109(d)(1). *Id*. at 18.

### C. Completing a thorough review comports with EPA's longstanding practice.

When reviewing and revising NAAQS, EPA has always undertaken a thorough review before finalizing a standard, no matter the criteria pollutant at issue. EPA Mot. 15, Szabo Decl. ¶ 36. This longstanding practice, consistent over many decades, powerfully supports EPA's interpretation here. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 39 (2024).

Intervenors' attempts to combat this history fail. It is the Rule that departed *sub silentio* from EPA's longstanding practice. *Contra* NGO Resp. at 10, 31. Intervenors cite EPA's occasional practice of reopening *air quality* criteria during a thorough review to account for a limited set of studies, NGO Resp. 31, but none demonstrates that EPA has revised a NAAQS without a thorough review. The examples from EPA's Response Brief at 79-80, ECF No. 2079971, do not undermine this point. One example is an instance in which EPA concluded a "thorough review" early—EPA does not dispute that it may complete its review early. *See* 62 Fed. Reg. 38856 (July 18, 1997). The other examples generally involve the reopening of air quality criteria as part of a larger thorough review (before finalizing standards based on review), identifying information to be

10

addressed in the *next* five-year review, or responding to a remand.[3]  Here, EPA

finalized a standard, updated only a subset of the criteria, and *then* revised the

standard; this was the first and only instance of such a practice.  *See generally*

Supplemental Declaration of Aaron Szabo ("Supp. Szabo Decl.) (describing

history of revisions).

Moreover, the fact that EPA has previously announced NAAQS

reconsiderations but never finalized a revision via reconsideration supports EPA's

position here—the Rule is an anomaly.  *See id.; see also* 75 Fed. Reg. 2938 (Jan.

19, 2010) (proposing reconsideration that President instructed EPA not to finalize);

87 Fed. Reg. 25485 (Apr. 29, 2022) (announcing reconsideration that was

eventually rolled into ongoing five-year review).

---

[3] *See* 48 Fed. Reg. 37519 (Aug. 18, 1983) (reviewed criteria in 1979, updated
certain criteria in 1983, and *then* proposed and finalized a standard based on
combined thorough review); 51 Fed. Reg. 11058 (Apr. 1, 1986) (determined that
new information needed to be analyzed to complete thorough review and went
back to the air quality criteria review stage *before* finalizing a NAAQS revision);
57 Fed. Reg. 35542, 35545(Aug. 10, 1992) (proposed to retain the NAAQS
without revision and explaining that EPA would consider some new studies in the
next five-year thorough review instead of delay the 1992 review process further);
59 Fed. Reg. 58958, 58960-63 (Nov. 15, 1994) (supplemented air quality criteria
*while* the air quality criteria review was ongoing, then proposing no revision on the
basis of a thorough review); 68 Fed. Reg. 614 (Jan. 6, 2003) (responding to remand
to address a specific health effect); 72 Fed. Reg. 71488, 71491 (Dec. 17, 2007)
(describing the lead NAAQS review wherein EPA assessed the scientific evidence
sporadically for several decades and ultimately completed thorough review in
2008).

At bottom, Intervenors argue that the Rule comports with EPA's typical practice without identifying a single analogous rulemaking. To the contrary, EPA's Motion describes EPA's consistent practice since the 1970s: revision of standards following a thorough review of the underlying air quality criteria and standards. *See* EPA Mot. 15; *see also* 58 Fed. Reg. 13008, 13013 n.1 (Mar. 9, 1993) (declining to consider studies not integrated into criteria and reaffirming longstanding position that "NAAQS decisions are to be based on scientific studies that have been assessed in air quality criteria"); *see also* Supp. Szabo Decl. (providing regulatory history).

### D. Legislative history and purpose do not override the text of Section 109(d)(1).

Neither the Act's statutory purpose nor the legislative history override the text of Section 109(d)(1). While courts have relied upon statutory purpose to inform their interpretation when the "purpose is readily apparent from the . . . text," they "are not free to pave over bumpy statutory texts in the name of more expeditiously advancing a policy goal." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 463 (2022) (citation omitted). Regardless, EPA's interpretation of its NAAQS revision authority is consistent with the purpose, which is to ensure consideration of the "latest scientific knowledge" on the public health or welfare effects of a pollutant as required for Section 108 criteria, 42 U.S.C. § 7408, before deciding whether and how to revise the related NAAQS under Section 109(b), *id.*

12

§ 7409(b)(1), "based on such criteria." While Intervenors incorrectly this as a limit that discourages revision of the standards, Congress plainly established minimal requirements for revision of the criteria and standards that comport with the statute's detailed and lengthy implementation scheme.

Intervenors identify purportedly "extensive express guardrails" like notice and comment and judicial review. NGO Resp. 26. These are standard operating procedures for every rule promulgated under the Act. As for Intervenors' claim that guardrails exist because standards must be based on criteria, *see id*., their interpretation necessarily separates revision of standards from consideration of criteria. Intervenors also contend that the second sentence confers a separate, discretionary authority because Congress did not repeat certain words that appear in the first sentence. *Id*. 22-23. Under their reading, the second sentence of Section 109(d)(1) is untethered from the substantive requirements incorporated into the first, meaning a reconsideration under the second sentence is not bound by any provisions of Sections 108 or 109(b). *Id*.

Similarly, the legislative history related to the promulgation of Section 109(d)(1) does not take precedence over the text. *See Azar v. Allina Health Servs*., 587 U.S. 566, 579 (2019). Here, the legislative history does not resolve any ambiguities in the statutory text. If anything, it supports EPA's interpretation. For example, the 1977 House Conference Report uses "review" to discuss both the first

13

sentence and second sentence of 109(d)(1), thus using the term interchangeably. *Contra* NGO Resp. 29. This indicates that Congress was referring to the same review in both sentences—a thorough review.

### E. Whether the Rule promulgated a new standard or revised a standard, the result is the same.

Intervenors contend that EPA acted properly under the second sentence of Section 109(d)(1) because the Rule can be "understood" as a "new" standard. NGO Resp. 29. This novel argument, never raised in the rulemaking, is forfeited. *See* 42 U.S.C. § 7607(d)(7)(B). It is also inconsequential. EPA must complete a thorough review of the air quality criteria before either revising a standard or promulgating a new standard. And every revision of a prior standard necessarily involves the promulgation of a new standard. Regardless of how EPA decides to regulate, EPA must base the standard on a thorough review of the air quality criteria.

In any event, EPA repeatedly referred to the Rule as a reconsideration or revision of the NAAQS. *See, e.g.*, Rule, 89 Fed. Reg. 16202 (Mar. 6, 2024). The Rule need not literally replace regulatory text of an earlier standard to qualify as a revision. EPA regularly revises standards without replacing the existing regulatory text, given ongoing implementation efforts tied to the prior standard. *See, e.g.*, 73 Fed. Reg. 66964 (Nov. 12, 2008) (standard revisions that left in place less stringent standards); 89 Fed. Reg. 105692 (Dec. 27, 2024) (same).

14

## II. Even if EPA could revise the standard without a thorough review, EPA abused its discretion by ignoring cost.

In the alternative, EPA erred in refusing to consider the costs associated with its discretionary mid-cycle review. Vacatur is thus proper because EPA failed to consider an important aspect of the problem.

EPA erred in refusing to consider a specific set of costs: those associated with a discretionary off-cycle NAAQS revision. EPA Mot. 18-19. Assuming that the second sentence of Section 109(d)(1) confers separate authority to revise a standard, that language gives EPA discretion in determining when and whether to do so. *Id*. at 19. Once promulgated, a standard generates significant reliance interests among States, local governments, and regulated parties under the Act's detailed implementation scheme. Szabo Decl. ¶¶ 26-33. The costs of a discretionary revision to something as consequential as a standard must be considered as part of reasoned decision-making.

Intervenors assert that EPA fails to show that costs were an important aspect of the problem. State-Intrv. Resp. 14, 19, ECF No. 21507474. But EPA concedes that it did not consider costs, and so it is not surprising that it lacks specific quantitative information. It is sufficient that EPA could have declined to undertake a discretionary revision if it had considered the costs associated with such an endeavor—indeed, in the past when costs were considered, EPA declined to finalize a proposed "reconsideration." *See* EPA Mot. 7, 20. Nonetheless,

Intervenors do not dispute that implementation of the NAAQS is a complex process, which generates significant costs. EPA identified four aspects of the Rule that it should have, but did not, consider. *Id*. 20.

Intervenors erroneously argue that EPA is attempting to shoehorn costs—but not benefits—into the equation. NGO Resp. 34-35. But EPA championed the benefits it attributed to the Rule, and regardless, ignoring both costs and benefits would likewise be ignoring an important aspect of the problem. If EPA has discretion to undertake off-cycle NAAQS revisions, it must engage in "reasonable regulation" that "ordinarily requires paying attention to the advantages and the disadvantages of agency decisions." *Michigan v. EPA*, 576 U.S. 743, 753 (2015).

Nor does EPA's consideration of the costs infringe on cooperative federalism. *Contra* NGO Resp. 34. To be sure, States seeking to comply with the NAAQS must tailor strategies to each State's unique situation. By acknowledging its duty to consider costs, however, EPA is not usurping the States' role in NAAQS compliance. EPA is simply accounting for the stepwise framework for compliance and how a mid-cycle change might disrupt that program. Intervenors gesture vaguely at federalism concerns but fail to explain how accounting for any of those factors would impact the States' ability and authority to comply with the NAAQS. Intervenors' argument that costs are "legally irrelevant to the outcome of the NAAQS-setting process," *id.*, ignores a critical distinction between the ultimate

16

standard (for which cost consideration is not permitted under current law) and the decision whether to exercise a hypothetical discretionary power to voluntarily undertake a mid-cycle revision.

### III.    The Motion is procedurally proper.

EPA has confessed error, thus changing its position in this litigation.  EPA's Motion is a straightforward and appropriate vehicle to present EPA's changed position for the Court's consideration in deciding this case.  Intervenors' procedural defect claim lacks merit.  State-Intrv. Resp. 10.  To begin, there was nothing improper about EPA's motions for abeyance following the Presidential transition.  EPA needed time for new leadership to review the Rule and determine appropriate next steps.  *See, e.g.*, ECF Nos. 2101162, 2113396, 2121802, 2130019. While EPA mentioned a rulemaking in support of its abeyance motions, it also stated that it was continuing "to consider appropriate next steps in this litigation in coordination with the Department of Justice."  ECF No. 2130019 at 2.  EPA's Motion does not mention the rulemaking because it is irrelevant.  EPA now agrees with Petitioners that the Rule exceeded the agency's statutory authority and should be vacated.  These issues were already before the Court, which is tasked with determining the best reading of the statute under *Loper Bright*.

Nothing prevents this Court from granting EPA's Motion now.  State-Intrv. Resp. 5.  Intervenors' objection to EPA's Motion is curious as EPA now seeks

what Intervenors desire: a final determination on the merits.  Further, Intervenors'

reference to Circuit Rule 27(f)(1) is inapt.  *Id.*  That rule concerns dispositive

motions filed early in litigation, before merits briefing, to narrow or resolve the

litigation.  *See, e.g.*, Circuit Rule 27(f)(3) (deferring merits briefing until resolution

of dispositive motions).  The rule does not apply where merits briefing and oral

argument have concluded.

**IV.     The Court should vacate because EPA exceeded its statutory authority and failed to consider a relevant aspect of the problem.**

EPA's failure to complete a thorough review before revising the NAAQS

compels vacatur.  EPA Mot. 21-23 (citing *Allied–Signal, Inc. v. U.S. Nuclear*

*Regul. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)).  In the alternative, EPA's

failure to consider cost compels vacatur because EPA entirely failed to consider an

important aspect of the problem.  *Id.*

**A.      EPA's errors were serious.**

**1.      EPA committed substantive errors, not mere procedural defects.**

Two serious deficiencies—neither of which could be repaired on remand—

afflict the Rule.  EPA Mot. 21-22.  Intervenors erroneously try to portray one of

these errors, EPA's failure to complete the required "thorough review," as a simple

procedural misstep.  State-Intvr. Resp. 12.  But this attempt falls flat.

First, EPA lacks the statutory authority to take the challenged action, which is a serious and substantive error that compels vacatur. The Act recognizes this distinction by separately addressing review of procedural errors and actions "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 42 U.S.C. § 7607(d)(9)(C)-(D). Thus, the Act recognizes that the lack of statutory authority is *not* a mere procedural error.

Here, because EPA did not conduct the required "thorough review," it lacked authority to revise the standard. *Infra* Arg. I.A. Intervenors cite EPA's Motion explaining that EPA "skipped" a step in the NAAQS reconsideration process to characterize this error as a minor flaw. State-Intrv. Resp. 11-12. But "skipping" a step—one that gives EPA the necessary authority to take the challenged action—can hardly be considered a simple procedural flaw. *See Air All. Hous. v. EPA*, 906 F.3d 1049, 1066 (D.C. Cir. 2018) (vacating rule where EPA exceeded its authority); *see also Davis Cnty. Solid Waste Mgmt. v. EPA*, 101 F.3d 1395, 1411 (D.C. Cir. 1996), *opinion amended on reh'g*, 108 F.3d 1454 (D.C. Cir. 1997) (same). And the step that EPA confesses it skipped—and that no party disputes—is a substantive requirement of Section 109(d)(1).

The "procedural errors" referred to in Section 307(d)(8) stem from "procedural determinations" made by EPA "under this subsection," such as establishing a rulemaking docket and providing for notice and comment. 42

19

U.S.C. § 7607(d)(2)-(8); *Coal. for Renewable Nat. Gas v. EPA*, 108 F.4th 846, 857 (D.C. Cir. 2024). They do not refer to agency action taken in excess of statutory authority, which the Act addresses separately. 42 U.S.C. § 7607(d)(9)(C). Compared to a classic procedural error like minor defects in notice and comment, failing to undertake a required analysis to determine if NAAQS "are requisite to protect the public health," *id.* § 7409(b)(1), is a substantive failure. *Cf. Ohio v. EPA*, 603 U.S. 279, 299 (2024) (holding that EPA's failure to reasonably explain gaps in decision was likely arbitrary and capricious, not procedural error).

Second, even if failing to undertake a thorough review *could* be considered a procedural error, it would be "so serious and related to matters of such central relevance" as to justify vacatur. 42 U.S.C. § 7607(d)(8); *see also NRDC v. Wheeler*, 955 F.3d 68, 85 (D.C. Cir. 2020) (vacating for "fundamental flaw" of failure to provide notice and comment). The thorough review conducted under Section 109(d)(1) is the basis on which EPA determines whether to revise or retain an existing NAAQS. Therefore, the absence of a thorough review "significantly change[s]" the substance of the Rule. 42 U.S.C § 7607(d)(8). So even if the Court finds EPA committed only procedural error, vacatur is still appropriate because the lack of a thorough review is "so serious" and "of such central relevance" to *any* NAAQS revision and could significantly change the substance of the rule. *Id.*

**2.      EPA's errors cannot be corrected on remand.**

Vacatur is the appropriate remedy where an agency acts in excess of its statutory authority or otherwise commits legal error.  That is especially true where the agency's errors cannot be corrected on remand.  And here, the Act specifically provides for vacatur of an action that exceeded EPA's authority.  42 U.S.C. § 7607(d)(9)(C).

A lack of statutory authority cannot be cured on remand.  *Waterkeepers Chesapeake v. FERC*, 56 F.4th 45, 49-50 (D.C. Cir. 2022).  State Intervenors sidestep the crux of EPA's argument by asserting that EPA did not adequately *explain* its authority to act.  State-Intrv. Resp. 17.  While such an error may be curable on remand, that is not the error EPA confesses here.  EPA cannot lawfully revise a standard without first conducting a thorough review of the air quality criteria and the existing standards.  EPA cannot explain away that deficiency.  And because the thorough review itself would shape the resulting standard, there is no reason to believe a rulemaking proceeding on remand would produce the same rule under review.

As for EPA's mistaken belief that it could not consider the costs of completing a mid-cycle, discretionary NAAQS revision, remand cannot correct that error.  *Contra* State-Intrv. Resp. 19.  EPA failed to even consider any questions relating to cost based on a fundamental misunderstanding of its

authority. EPA cannot now assess such costs without evaluating and adding substantial new information to the record. EPA would be required to "'deal with the problem afresh' by taking *new* agency action," *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 21 (2020), and cannot predetermine that new action's outcome. In addition, courts "have not hesitated to vacate a rule when the agency has not responded to empirical data or to an argument inconsistent with its conclusion." *Comcast Corp. v. FCC*, 579 F.3d 1, 8 (D.C. Cir. 2009). The Agency's failure to address an important aspect of the problem is a "major shortcoming[]" that warrants vacatur. *See Humane Soc'y v. Zinke*, 865 F.3d 585, 614-15 (D.C. Cir. 2017).

### B. Vacatur would not be unduly disruptive.

Vacatur would essentially preserve the status quo by putting back into effect the twelve micrograms per cubic meter standard reaffirmed in the 2020 rule. This standard has been in place since 2012 and is familiar to the regulated community. States that have been implementing it for over a decade—a factor courts consider when assessing disruptiveness. *See also Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7, 21 (D.D.C. 2014) (vacating a rule that would reinstate a longstanding regulation because doing so would have "limited disruptive consequences"). This is not a case where "[t]he egg has been scrambled." *Sugar Cane Growers Co-op. of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002).

22

Although some implementation of the Rule has occurred thus far, those steps may be reversed, and the most disruptive requirements are not yet effective. EPA Mot. 22-23.

Remand without vacatur would compel EPA to take significant steps to implement the unlawful Rule in the coming months—a result more disruptive than vacatur. *Id*. Intervenors' claims of disruption are unfounded. *See* State-Intrv. Resp. 19-21. States may still pursue their own efforts to control air pollution consistent with state and federal law. *See* 42 U.S.C. § 7416.

## CONCLUSION

The Court should grant EPA's motion to vacate the Rule.

Dated: December 23, 2025.

Respectfully submitted,

/s/ *Sarah Izfar*
ADAM R.F. GUSTAFSON
   *Principal Deputy Assistant Attorney General*
ROBERT N. STANDER
   *Deputy Assistant Attorney General*
SARAH IZFAR
   *Trial Attorney*
   Environmental Defense Section
   Environment and Natural Resources Div.
   U.S. Department of Justice

Of Counsel:

ISABELLA SMITH
*Attorney*
U.S. Environmental
Protection Agency

P.O. Box 7611
Washington, DC 20044
(202) 532-3050
Sarah.izfar@usdoj.gov

*Counsel for Respondents*

**CERTIFICATE OF COMPLIANCE**

1.     This document complies with this Court's December 23, 2025 order, ECF No. 2151905, because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 5,197 words.

2.     This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Sarah Izfar*
SARAH IZFAR

Counsel for Respondents

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

/s/ *Sarah Izfar*
